JOSEPH N. PHILLIPS *vs.* THE WASHINGTON AND ROCKVILLE RAILWAY COMPANY OF MONTGOMERY COUNTY.

*Collision at Electric Railway Crossing in the Country—Contributory Negligence.*

Plaintiff, riding sideways on horseback along a country road, on one side of which ran the track of an electric railway, turned to cross the track with his back towards an approaching car, which struck the hindquarters of the horse and injured it and the rider. The plaintiff testified that at the moment he started over the crossing, he slightly halted his horse and looked up and down the track and saw no car. But the evidence established the fact that there was then a clear view of the track and of the car for a distance of 500 feet. *Held,* that the plaintiff failed to see the approaching car, because he did not really look, and consequently was guilty of contributory negligence as matter of law, which precludes him from recovering damages for the injury.

More caution is demanded of a person in crossing a track of an electric railway in the country than would be necessary in a city.

*Decided December 19th, 1906.*

Appeal from the Circuit Court for Howard County ( JONES and THOMAS, JJ.)

The cause was argued before McSHERRY, C. J., BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*Charles W. Prettyman* (with whom were *W. V. Bouic* and *John G. Rogers* on the brief ), for the appellant.

*H. Maurice Talbott* (with whom was *W. H. Talbott* on the brief ), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is a personal injury case and there is but one question raised on the record. At the conclusion of the testimony the trial Court granted an instruction which directed the jury to return a verdict in favor of the defendant on the ground that

the plaintiff had been guilty of contributory negligence. Was that ruling right? All the other prayers presented by both sides were rejected, but inasmuch as they are not included in the only bill of exceptions contained in the transcript they will not be alluded to, even though they have been appended to the record and have been printed therein immediately after, but not as a part of the bill of exceptions.

The Washington and Rockville Electric Railway runs from Washington to Rockville. For some portion of its route it occupies a part of the roadbed of a public road which was formerly a turnpike road. At the place where the accident occurred and for some distance on either side of that spot the electric roadbed occupies from ten to fifteen feet in width of the upper or eastern side of the old turnpike road. No plat of the locality appears in the record and the description of the surrounding topography is very confused and imperfect. Going from Rockville towards Washington on the turnpike road the railroad at and along the scene of the accident is upon one's left hand—that is, upon the left hand margin of the turnpike road. At a point described as Lochte's shop, nearer to Rockville than the place of the accident, there is a long siding used to enable cars going in opposite directions on the single track of the electric railroad to pass. Farther down towards Washington is Walsh's crossing, a road or way leading from the upper or eastern side of the turnpike road to Walsh's residence and to Chevy Chase Circle, a thickly settled suburban settlement not far distant from Washington. A car going from Rockville to Washington after rounding a curve at Lochte's shop and reaching Wilson's store can be seen from Walsh's crossing on looking towards Rockville for a distance of three hundred yards before it gets to the crossing. On the twelfth of August, 1903, Phillipps, the appellant, was engaged in making hay on the farm of Dr. Walsh near the crossing. The car from Rockville to Washington was due at the siding at two o'clock and was not in the habit of leaving the siding until the arrival of the car from Washington to Rockville, which was likewise due at the same hour. The appellant, who lived in

the vicinity of the siding and was familiar with the running of the cars, left his home shortly before two o'clock P. M. to go to Walsh's field.  He rode from his home sidewise on his horse, in his shirt sleeves with a pitchfork on his back.  The direction he went along the turnpike was towards Washington.  Both of his legs were on the right hand side of the horse and his back was consequently towards the railway track.  He was proceeding in a line parallel to the railway. When he reached Walsh's crossing he turned to the left and this brought his horse face to face with the railway tracks. He was then between ten and fifteen feet distant from the tracks.  He could have seen, according to one statement in the record, nine hundred feet up the track towards Rockville, and according to another statement four hundred and fifty feet in the same direction, at the moment he turned to his left to go over the crossing.  He says he slightly halted his horse and looked in both directions but saw no car approaching from either Rockville or Washington.  He then proceeded to cross the track and after he and his horse had gotten nearly over, the car from Rockville struck the horse on the left hindquarter and threw horse and rider against a trolley pole, injuring both.  The theory upon which the Court below acted in granting the prayer to which exception is taken assumed that there was evidence tending to prove some negligence on the part of the railway company, since it denied the appellant a right to recover because he had been guilty of contributory negligence; and there can be no contributory negligence where there has been no primary negligence on the part of the defendant.  We need not, therefore, inquire whether the railway company was guilty of negligence on the occasion in question; nor need we review the evidence tending to establish such negligence, for the existence of negligence is implied as a postulate in the granted instruction.  On the facts stated was there such a clear, decisive and prominent act on the part of the appellant as in law amounted to contributory negligence?  Do the facts leave no room for ordinary minds to differ in respect to the conclusion to be drawn from them?

If the approaching car *could* have been seen by the appellant in time to avoid the collision had he looked in the direction 'it was moving, and he says he did not see it; then it follows that he did not see it solely because he did not look, notwithstanding he says he did look, unless it is shown that his eyesight was so defective that it was impossible *by reason of that fact,* for him to see it. But there is no pretense that his vision was impaired and hence the conclusion is irresistible that; though he says he looked, he failed to see the approaching car because he did not look; and if he did not look before crossing the tracks he was guilty of sheer contributory negligence. During the whole time he rode along the turnpike his back was towards the tracks, and when he turned at right angles to go over the crossing his back was towards the approaching car. He was facing Washington after turning. If he then glanced to the right he looked away from the tracks; if he glanced to the left his line of vision was directly over and perpendicular to the tracks at the crossing. To have seen *up* the tracks towards Rockville and therefore towards the car which finally struck him, he would have been obliged to turn completely around on his horse and face in a direction precisely opposite to the one he occupied after he had turned his horse to cross the tracks. He does not say he did this, and unless he did do so, it was not possible for him to see the oncoming car. If the car was not in sight just before his horse stepped on the track then the car must have run not less than four hundred and fifty feet during the time the horse, in a walk, covered less than six feet—the distance between the place where the hindquarter of the horse was when it was struck and a position of safety before entering on the tracks. It did not take the horse over two seconds to walk six feet, assuming that he walked at a slightly faster gait than two miles an hour. The car, to reach simultaneously the same point occupied by the horse, would have been required to traverse two hundred and twenty-five feet a second, which would be at the rate of two hundred and seventy thousand yards, or something over one hundred and fifty-three miles an hour.

There is of course, no pretence that any such speed was, or could have been made. If the car was running at thirty miles an hour as some of the evidence indicated it required ten seconds to cover the distance of four hundred and fifty feet intervening between the point where confessedly the car could have been seen by the appellant as it and he approached the crossing, and the point where the collision occurred. The appellant and the car approached the crossing in directions at right angles to each other and the appellant's back was turned squarely towards the oncoming car. There were at least ten seconds during which he could have seen that car if he had looked; and ten seconds, if one will take a watch and tell them off, is a very appreciable space of time. Certainly that period offered an ample opportunity for the appellant to halt before attempting to cross the tracks. It was carelessness on the part of the appellant to venture on the tracks with his back towards the car which struck him; and his injury was undoubtedly due to his inability to see up the track in his rear, and his inability to see up the track was occasioned by his voluntary assumption of an attitude in riding which no prudent man would have taken in crossing a railway track. If he had been riding his horse in the usual way he could, by a slight turn of his head, have seen the car in time to have awaited in a place of safety its passage over the crossing. His failure to do this directly contributed to the production of the injury which befell him. He cannot, therefore, ascribe the collision solely to the negligence of the railway company.

In considering this question of contributory negligence it must be borne in mind that the injury did not occur on the streets of a city, but in the open country where a higher rate of speed in the movement of electric cars is permissible than is allowable along the more crowded thoroughfares of a town. More caution was therefore demanded of a person in crossing a track of an electric railway in the country than would have been necessary in the city. The use of no greater caution in the open country than would have been requisite to constitute ordinary care and prudence in the city, would not have been

due care and caution on the part of the individual in approaching and going upon an electric railway crossing in the country. An act which would be prudent in the city might be glaringly negligent in the country; and, hence, the standard by which contributory negligence is to be measured in the two instances necessarily varies with the changed conditions existing in the two dissimilar localties.

No two ordinary minds could differ as to the characterization of the appellant's act in crossing the tracks with his back turned towards the approaching car.

It was obviously negligent, if not reckless, to attempt such a thing. The result that was most likely to follow that conduct did happen, and the consequences must be borne by the person so guilty of incaution or heedlessness.

As all the other questions intended to be raised in the case are presented by the prayers which are not incorporated in the bill of exceptions, they cannot be considered. We think the Court below was right in granting the instructions which withdrew the case from the consideration of the jury, and the judgment entered on the verdict in favor of the defendant must be affirmed.

*Judgment affirmed with costs above and below.*