# THE UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE *vs.* JAMES WARD.

*Collision Between Electric Street Car and Wagon at Street Crossing—Contributory Negligence—Avoidance of Injury—Questions for the Jury—Instructions—Evidence—Municipal Ordinance Regulating Speed of Electric Cars at Street Crossings.*

The double tracks of the defendant, an electric street railway company, run north and south on the Liberty Road where it is intersected by Walbrook avenue. Plaintiff, driving in an open wagon, accompanied by another man, on Walbrook avenue, approached the crossing from the west, going at a walk. The evidence of these two men was to the effect that when he got within fifteen feet of the first track, being the southbound track, plaintiff looked and listened for cars, without hearing or seeing any, and looked again just before going on the track; that when the horse was on the second or northbound track, and the wagon was between the two tracks, they saw a car coming up on the northbound track at a high rate of speed, about one hundred and fifty feet distant; that the view both from the car and the wagon was unobstructed for a considerable distance; that no signal had been given of the car's approach; that the motorman seemed to be working at the brakes, but the speed of the car increased; that plaintiff, upon seeing the car when he was in that dangerous position, whipped up his horse in an attempt to clear the track, but the wagon was struck when it was on the northbound track and the plaintiff was thrown out and injured. *Held,* that upon this evidence, the case should not be withdrawn from the jury either on the ground that there was no evidence of negligence on the part of the defendant, or on the ground that the plaintiff was guilty of such contributory negligence as to bar all right of recovery; that even if it be

assumed that the plaintiff did not look to see if a car was coming before starting across the tracks and was to that extent negligent, yet the motorman had an unobstructed view of the crossing for more than five hundred feet and gave no warning of the approach of the car, which was running at a rate of speed prohibited by ordinance at crossings, and if the motorman saw or ought to have seen the plaintiff in time to avoid the collision, it was his duty to have done so, and since there is evidence that the motorman could, by the exercise of due care, have avoided the accident, the case should be submitted to the jury.

An eye-witness of a collision at a railway crossing may give his opinion concerning the speed of the car at the time of the accident.

The ordinance of Baltimore City providing that no electric or cable car shall cross any open street in the city at a speed greater than six miles an hour is applicable to the crossing of any street used as such by the public, whether the City owns the bed of the street or not.

In an action to recover damages for an injury alleged to have been caused by defendant's negligence, a prayer instructing the jury that if they find that the accident happened as testified to by the plaintiff, then their verdict must be for him, is erroneous.

When the plaintiff's evidence is that his wagon was between the two tracks of an electric railway company when he first saw the car approaching which collided with it, a prayer is misleading and properly rejected which instructs the jury that if the motorman of the car saw the wagon approaching the track, he had the right to assume that the driver would stop his horse in a place of safety and would not attempt to drive across the track in close proximity to the car.

*Decided per curiam June 22nd, 1910.   The following opinion was filed August 5th, 1910.*

Appeal from the Baltimore City Court (NILES, J.), where there was a judgment on verdict for the plaintiff for $4,000.

*Plaintiff's 1st Prayer as Modified.*—If the jury find from the evidence that on or about the 20th day of April, 1908, about 12.30 o'clock P. M., the plaintiff while seated in a wagon drawn by one horse, and driven by the said plaintiff along and over Walbrook ave. at or about its intersection with the Liberty road in Baltimore City was injured by a car of the defendant while operated by its agents on its road and that said injury resulted directly from the want of ordinary care and prudence on the part of the defendant and not from the want of ordinary care and prudence on the part of the plaintiff directly contributing to the injury then the plaintiff is entitled to recover.

Provided the jury shall further find that Walbrook avenue at the point where the accident occurred (if they shall so find) was at the time of said accident used by the public, without objection, in all respects as one of the streets of Baltimore City and had been so used for several years previous to the date of said accident. (*Granted.*)

*Plaintiff's 2nd Prayer as Modified.*—If the jury find that at the time of the accident the car in question was being driven at a greater rate of speed than six miles an hour at the crossing of Liberty road and Walbrook avenue (if the jury find that the accident occurred at said crossing) and shall find the ordinance of the Mayor and City Council, offered in evidence and shall further find the facts stated in the proviso of the plaintiff's first prayer modified and shall further find that if the said car had not been running at a greater rate of speed than six miles an hour the accident could have been avoided, then there was a want of ordinary care on the part of the defendant, as mentioned in the plaintiff's first prayer. (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury find for the plaintiff, then in estimating damages they are to consider the health and condition of the plaintiff before the injuries complained of as compared with his present condition, and whether the same are in their nature permanent and how far they are

calculated to disable the plaintiff from engaging in those business pursuits for which in the absence of such injuries he would have been qualified; and also the physical and mental suffering to which he has been subjected by reason of said injuries, and the jury are to allow such damages as in their opinion will be fair and just compensation for the injuries suffered. (*Granted.*)

*Plaintiff's 4th Prayer.*—The Court instructs the jury that if they find that the accident happened as testified to by the plaintiff James Ward then their verdict must be for the plaintiff. (*Granted.*)

*Defendant's 1st Prayer.*—That there is no evidence legally sufficient to entitle the plaintiff to recover in the above entitled cause and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's 2nd Prayer.*—That there is no evidence legally sufficient to show in this case that the collision mentioned in the plaintiff's testimony was caused by any act of negligence on the part of the defendant's agents and servants in the management, operation or control of the car mentioned in the testimony, and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's 3rd Prayer.*—That the uncontradicted testimony shows that the plaintiff was guilty of negligence directly contributing to the happening of the accident mentioned in the testimony, and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's 4th Prayer.*—The jury are instructed, that there is no evidence legally sufficient in this case to show that after the plaintiff reached a position of danger upon the defendant's track in front of the approaching car, that the motorman could, by the exercise of ordinary care and caution, have prevented the happening of the collision mentioned in the testimony, and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's 5th Prayer.*—That the plaintiff's own testimony shows that when the plaintiff reached a position of danger upon the defendant company's tracks, it was impossible for the motorman of this car, by the use of ordinary care and caution on his part, to have prevented the happening of the accident mentioned in the testimony and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's 6th Prayer.*—The Court instructs the jury under the pleadings that the burden of proof is upon the plaintiff to show that the injury complained of was caused by the want of ordinary care on the part of the motorman of the car, and unless the jury shall be satisfied by the preponderance of testimony that the injury complained of was caused solely by the want of ordinary care on the part of the motorman, the plaintiff is not entitled to recover, and the verdict must be for the defendant. (*Granted.*)

*Defendant's 7th Prayer.*—That if the motorman of the car saw the wagon approaching the track, if the jury so find, he had the right to assume that the driver of the wagon would stop his horse in a place of safety, and would not attempt to drive across the track in close proximity to the car. (*Refused; misleading under circumstances of this case.*)

*Defendant's 8th Prayer.*—That even if the jury should believe that the motorman was guilty of negligence, yet if they shall further believe from the evidence that the plaintiff was also guilty of negligence, and that the injury was directly caused partly by the negligence of the motorman and partly by the negligence of the plaintiff, then the verdict of the jury must be for the defendant without regard to whose negligence was the greater. (*Granted.*)

*Defendant's 9th Prayer.*—If the jury shall find from the evidence that as the car mentioned in the testimony was at or near the south side of Walbrook avenue, the plaintiff saw the approaching car, and pulled up his horse and then applied the whip to his horse, and attempted to cross in front of the

approaching car, then the verdict must be for the defendant. (*Granted.*)

*Defendant's 10th Prayer.*—If the jury shall find from the evidence that the accident in question could have been avoided by the exercise of ordinary care and caution on the part of the plaintiff, the verdict must be for the defendant. (*Granted.*)

*Defendant's 11th Prayer.*—The Court instructs the jury that, if they shall find from the evidence that when the car mentioned in the testimony was at or near the south side of Walbrook avenue, the plaintiff pulled up his horse and afterwards applied the whip to his horse, and attempted to cross in front of the approaching car, then their verdict must be for the defendant.

*Defendant's 11th Prayer as Modified.*—If the jury shall find from the evidence that when the car mentioned in the testimony was at or near the south side of Walbrook avenue, the plaintiff and his horse were west of the track on which the car was running (if the jury so find) and that the plaintiff pulled up his horse and afterwards applied the whip to his horse, and attempted to cross in front of the approaching car, then their verdict must be for the defendant. (*Granted.*)

*Defendant's 12th Prayer.*—The Court instructs the jury that, if they find that the accident happened as testified to by the witness Sullivan then their verdict must be for the defendant. (*Granted.*)

The cause was argued at the October Term, 1909, and was re-argued at the January Term, 1910, before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS. PATTISON and URNER, JJ.

*Joseph C. France* and *J. Pembroke Thom,* for the appellant.

*James J. Lindsay,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment in favor of the plaintiff in an action to recover for injuries alleged to have been caused by the negligence of the appellant. During the trial in the Court below, the defendant reserved five exceptions, the first four of which relate to the rulings of the Court on the evidence, and the fifth is to the granting of the plaintiff's third and fourth prayers and plaintiff's first and second prayers as modified, and to the rejection of the defendant's first, second, third, fourth, fifth and seventh prayers, and the modification of its eleventh prayer.

The main contention of the appellant is that there was error in the rejection of its first, second, third, fourth and fifth prayers, by which the Court was asked to instruct the jury that the plaintiff was not entitled to recover, first, because he was guilty of contributory negligence, and, second, because there was no evidence legally sufficient to show that the defendant was negligent. In considering the questions raised by these prayers it will be necessary to review the evidence in the case, and to bear in mind the well-established rule that the conduct relied on as constituting in law contributory negligence must be established by clear and uncontradicted evidence, and "unless there is some prominent and decisive act, in regard to which there is no room for ordinary minds to differ," the question of contributory negligence must be left to the jury; and that where "the nature of the act relied on to show contributory negligence can only be determined by considering all the circumstances attending the tranaction, it is within the province of the jury to characterize it" (*Strauss* v. *United Rys. Co.,* 101 Md. 499) ; and the further rule that greater care and caution is necessary to be exercised in running a car across the streets or thoroughfares of a city than is required in crossing a highway in the open country.

The appellee while driving along Walbrook avenue, one of the streets of Baltimore City, in attempting to cross the

tracks of the appellant company at the corner of Walbrook avenue and Liberty road, was struck by one of the appellant's cars and was injured. There are two tracks on this line, both on the west side of Liberty road, one called the southbound and the other the northbound track, and where Walbrook avenue crosses Liberty road they are level with the surface of the street. On the day of the accident the appellee was employed by Stewart and Company, and was engaged in delivering packages for his employers. He was driving an ordinary one-horse delivery wagon, and had with him at the time of the accident a young man named Thomas R. Robbins, who was assisting him in distributing the packages, and a small child whom he had picked up on his route. The appellee was sitting on the right side of the front seat of the wagon, with the child next to him, and Thomas R. Robbins was sitting on the left side of the same seat. The side and back curtains of the wagon were up, and as they approached the crossing at Walbrook avenue and Liberty road, driving along the south side of Walbrook avenue and going east, when about fifteen or twenty feet from the west side of Liberty road, according to the testimony of the appellee and Robbins, they both looked to the north to see if there was a car coming on the southbound track, and to the south to see if there was one coming on the northbound track and did not see or hear one, and at that point they could, by looking over a fence, see a car coming north from North avenue, the next street south, for three-quarters of a block. The appellee further states that when the horse had about reached the west edge of the southbound track, which was the first track to be crossed, he looked again to the south, in the direction of North avenue, to see if a car was coming on the northbound track, at which point he could see as far as North avenue, and not seeing or hearing one he drove on in a walk, and that when the wagon was between the northbound and southbound tracks he saw a car rapidly approaching on the northbound track, about one hundred and fifty feet distant, and that the motorman was

working the lever. In answer to the question, "Now, what
effort, if any, did you make when you saw the car coming
up at that point at this rapidity?" he said: "I tried to get
out of his way, I saw he couldn't clear it, and I tried to help
him out, that was the only thing I could do." He stated fur-
ther that he thought the car was going about forty miles an
hour; that when he first saw the car approaching on the north-
bound track the wagon was between the northbound track
and the southbound track, and the horse was on the north-
bound track; that seeing that the motorman could not stop
the car he urged the horse on with the hope of clearing the
track, but that the speed of the car seemed to increase after
he saw it and until it struck him, and that when the wagon
was struck it was on the northbound track.

Thomas R. Robbins further testified that when you get
within three feet of the southbound track, coming east on
Walbrook avenue, you can see the east side of Liberty road as
far as North avenue, but you cannot see the car tracks "be-
cause of the yards on 11th street, you only see the top of a
car;" that after he looked, when about fifteen or twenty feet
from the southbound track, and did not hear or see a car, he
turned to one side to get his packages ready, and that when
he turned around again and looked up the horse was on the
northbound track, and he saw a car about one hundred feet
away coming north, from North avenue to Walbrook avenue;
that it was coming as fast as it could come, "I guess about
fourteen miles an hour;" that he had no idea how fast a car
can go, but that "this car was going as fast as it could." He
stated further that "the motorman was in control of the car,"
and that "he was turning off the brakes or turning them on,
I don't know which, in the excitement, because the next min-
ute I was thrown out of the wagon. That the car struck the
right wheel in front, it struck the hub; it struck the hub and
bent the axle and drove it about fifteen or twenty feet north-
erly." There is also evidence tending to show that the dis-
tance from North avenue to Walbrook avenue is four hun-

dred and twenty-eight feet; that the motorman of a car coming north on Liberty road can see a horse's head on the west side of Liberty road at Walbrook evenue from a point five hundred and fifty feet distant, and for five hundred and fifty-eight feet he would have full view of anyone crossing Liberty road at Walbrook avenue; that Walbrook avenue and Liberty road are much used thoroughfares within the city limits, and that on the accasion of the accident no signal or warning was given by those in charge of the car as it approached the crossing.

The appellant relies upon the cases of *McNab* v. *United Rys. Co.,* 94 Md. 719; *Meidling* v. *United Rys. Co.,* 97 Md. 73; *Heying* v. *United Rys. Co.,* 100 Md. 281, and *Phillips* v. *W & R. Ry. Co.,* 104 Md. 455. In *McNab's Case* the accident happened in the country, where the rate of speed at which the cars ran was from twenty to twenty-five miles an hour. "Plaintiff drove in her phaeton at a trot along the county road to the turnpike when, slowing down but not stopping, she looked to see if a car was coming from one direction on the track nearest her. Seeing no car on that track and hearing no gong sounded, plaintiff drove across the road and when her horse was in the space between the two tracks she saw a car forty feet distant approaching at a high rate of speed from the other direction. Her horse was gentle and accustomed to the cars and she was then in a place of safety. Instead of stopping or backing she whipped up her horse and attempted to cross in front of the cars which struck the rear wheels of the carriage, throwing her out and causing an injury." On cross-examination she was asked whether the horse was afraid of the cars, and she answered: "Not at all, and she is not afraid yet." She was also asked: "You knew the cars could pass her without her being afraid?" And she replied: "Yes, sir." She was then asked the following question: "Then there was nothing so far as the mare's nervousness was concerned, which would prevent you pulling her back and letting the car pass in front?" and her answer was,

"Nothing at all, only I never back if I can go forward."
CHIEF JUDGE McSHERRY said in that case: "It is perfectly
obvious from the plaintiff's own testimony that when she saw
the approaching car she was in a place of safety; that by
staying for a moment where she then was she would not have
incurred any risk of injury either from the car or from the
frightening of her horse; that there was no reason whatever
for her not stopping or not remaining in that place of safety,
other than her indisposition to back if she could go forward;
and that she deliberately went forward in the face of an im-
minent and apparent danger because she thought she could
get across the south track before the car running on that track
reached the point at which she was crossing. This was sheer
recklessness."

In *Meidling's Case* the deceased was driving after dark to-
wards the tracks of a suburban electric railway. "The road
lay through open fields, and the cars ran there at a high rate
of speed. The view was unobstructed and the deceased saw
the headlight of an approaching car but supposing that he
could cross in time continued to drive on as before and a col-
lision occurred which caused his death." The Court there
held that the contributory negligence of the deceased in thus
attempting to cross in front of a rapidly approaching car
which he clearly saw was such as to bar a recovery.

In *Heying's Case* the "plaintiff, a woman, driving a wagon
on a dark morning in midwinter, came to the tracks of de-
fendant's electric street railway. She saw a car coming, but
erroneously thinking there was time to cross, attempted to
do so, and the wagon was struck by the car and plaintiff was
injured. There was no evidence that the motorman could
have stopped the car, after perceiving plaintiff's peril, in
time to avoid the collision." The Court held that the case
was properly withdrawn from the jury because there was no
evidence of negligence on the part of the defendant and there
was evidence of contributory negligence.

In *Phillipp's Case* the plaintiff was riding sidewise on horseback along the county road, on one side of which ran the tracks of an electric railway. In that case JUDGE McSHERRY said: "During the whole time he rode along the turnpike his back was towards the tracks, and when he turned at right angles to go over the crossing his back was towards the approaching car. He was facing Washington after turning. If he then glanced to the right he looked away from the tracks; if he glanced to the left his line of vision was directly over and perpendicular to the tracks at the crossing. To have seen *up* the tracks towards Rockville, and therefore, towards the car which finally struck him, he would have been obliged to turn completely around on his horse and face in a direction precisely opposite to the one he occupied after he had turned his horse to cross the track. He does not say he did this, and unless he did so, it was not possible for him to see the oncoming car. * * * It was carelessness on the part of the appellant to venture on the tracks with his back towards the car which struck him; and his injury was undoubtedly due to his inability to see up the track in his rear, and his inability to see up the track was occasioned by his voluntary assumption of an attitude in riding which no prudent man would have taken in crossing a railway track. * * * In considering this question of contributory negligence it must be borne in mind that the injury did not occur on the streets of a city, but in the open country where a higher rate of speed in the movement of electric cars is permissible than is allowed along the more crowded thoroughfare of a town. More caution was, therefore, demanded of a person in crossing a track of an electric railway in the country than would have been necessary in the city. The use of no greater caution in the open country than would have been requisite to constitute ordinary care and prudence in the city, would not have been due care and caution on the part of the individual in approaching and going upon an electric railway crossing in the country. An act which would be prudent in the city might

be glaringly negligent in the country; and, hence, the standard by which contributory negligence is to be measured in the two instances necessarily varies with the changed conditions existing in the two dissimilar localities."

The facts of these cases, as we have stated them above, clearly distinguish them from the case at bar. Here the plaintiff was driving along one of the thoroughfares of the city. Before attempting to cross the tracks of the appellant he looked twice to see if a car was approaching, and not seeing one he ventured across as he had a right to do. When he first discovered the rapidly approaching car he was not, according to his testimony and the testimony of Robbins, in a place of safety, for the wagon was between the northbound and the southbound tracks and the horse was on the northbound track. He says that in the position he was in it was not possible for the car to pass without striking him, and that the only thing he could do was to try to get across the track, which he tried to accomplish.

The appellant insists that if the appellee had looked before venturing to cross the tracks he would have seen the car, and as he did not see the car he evidently did not look, but even if we assume that the appellee did not, before attempting to cross the tracks, look to see if a car was approaching, and that he was to that extent negligent, the Court below would not have been justified in directing a verdict for the defendant on the ground of contributory negligence, or because there was no evidence of negligence on the part of the appellant. As we have said, the evidence tends to show that in coming up Liberty road the motorman had an unobstructed view of the crossing at Walbrook avenue for the distance of five hundred and fifty-eight feet, and that no warning was given of the approaching car. The company is not allowed to run its cars along the thoroughfares of the city at the rate of speed permitted in the country, and as they approach a street crossing it is a duty of those in charge of the car to keep a sharp lookout, and, if the car is moving rapidly, to

slacken its speed sufficiently to enable them to have the car well under control so as to avoid a collision with anyone who may be using the crossing. If the motorman in charge of the car in question saw the appellee, or by the exercise of due care could have seen him in the act of crossing the tracks in time to have prevented the accident, it was his duty to have stopped the car in time to avoid the collision, and if the accident occurred by reason of his failure to do so under such circumstances, his negligence, and not the negligence of the appellee, was the proximate cause of the injury. This rule was applied in the case of *Consolidated Ry. Co.* v. *Rifcowitz,* 89 Md. 338, where a woman was injured while crossing a street in front of an approaching car, which was only fifteen feet from the point at which she attempted to cross. There was a clear view in the direction from which the car came of one thousand feet, and she testified that she looked and did not see the car. There was also evidence tending to show that the motorman did not ring his gong, and that the car was going at the rate of ten or eleven miles an hour. In that case the Court said: "The prayer, in the form in which it was offered by the defendant, rested upon the broad proposition that the plaintiff had, by her contributory negligence, destroyed her right of recovery, because although she testified that she had looked for a car on Pratt street before attempting to cross, her evidence also showed that there was nothing to prevent her from seeing the car if she had properly looked for it. It has been held in different cases that while the public had equal rights with street railway companies to use the streets of a city for purpose of travel, a pedestrian, in the exercise of his right of crossing a street, should use his senses to ascertain whether a car is approaching. Due and ordinary care must be exercised in crossing the streets, as in all other transactions of life. * * * These cases, however, also hold that the failure by a pedestrian to stop and look before crossing a street railway will not under all circumstances, *per se,* constitute such contributory neg-

ligence as will prevent recovery. Mere negligence or want
of ordinary care will not disentitle the plaintiff to recover,
unless the negligence is such that but for it the misfortune
could not have happened; nor if the defendant might by ex-
ercise of care on his part have avoided the consequences of
the neglect or carelessness of the plaintiff. * * * There was
some conflict of evidence as to the conduct of the plaintiff at
the time of the accident, but, assuming that she was negli-
gent, there was evidence from which the jury might have
found that the motorman could, by exercising care on his
part have prevented the consequence of the neglect or care-
lessness of the plaintiff." See also *United Railways Co.* v.
*Carneal,* 110 Md. 211. If, on the other hand, the motorman
was exercising due care in approaching the crossing, and was
led by the act or conduct of the appellee to reasonably be-
lieve that he would not attempt to cross the tracks until after
the car had passed, the appellant would not be liable unless,
after discovering the appellee in the act of crossing the tracks,
the motorman could by the exercise of due care have avoided
the accident.

It follows from what we have said that if the testimony of
the appellee and Robbins, that they looked before venturing
across the tracks and did not see a car, and that when they
first saw the car the horse was on the northbound track, is en-
titled to any credit, the case was one for the jury, and that
even if it be assumed that the appellee did not look for a car
before attempting to cross the tracks, and that he was to that
extent negligent, there was evidence tending to show that the
motorman could, by the exercise of due care, have avoided
the accident, and that there was, therefore, no error in the
refusal of the Court below to withdraw the case from the
jury.

The first exception is to the action of the Court in permit-
ting the plaintiff to state the speed at which the car was
running when he first saw it approaching, and the third and
fourth exceptions are to the rulings of the Court allowing the

witnesses to state how long Liberty road and Walbrook ave-
nue have been travelled by the public.   We see no objection
to this evidence.   It is the uniform practice to allow those
who witness an accident of the character of the one we are
considering to testify to the speed of the train or car, and to
permit those who are familiar with it to describe the place
of the accident.   *Balt. City Pass. Co.* v. *McDonnell,* 43 Md.
534; *Consolidated Ry. Co.* v. *Rifcowitz, supra; United Ry.
Co.* v. *Seymour,* 92 Md. 425; 1 *Greenleaf on Evidence* (16th
ed.), sec. 441 J; and 3*Wigmore on Evidence,* sec. 1977.

The second exception is to the admission in evidence of the
ordinance of the Mayor and City Council of Baltimore which
provides: "No traction, cable, electric or other city passen-
ger railway car or cars not drawn by horse power shall cross
any open street within the limits of the City of Baltimore
at a speed greater than six miles an hour; for each and every
violation of this section the offender upon conviction thereof,
shall be liable to a fine of five dollars and costs."   The
ground of this exception is that there was no evidence to show
that the city owned that portion of Walbrook avenue which
crosses Liberty road.   The defendant offered in evidence an
ordinance of the Mayor and City Council of Baltimore au-
thorizing the Mayor to accept a deed for the bed of Walbrook
avenue from the Baltimore and Liberty Turnpike road to
Thirteenth street, the deed to the Mayor and City Council
for that part of the bed of Walbrook avenue, and also an
agreement between the Baltimore Traction Company and the
Baltimore and Liberty Turnpike Company, whereby the said
Turnpike Company granted to said Traction Company the
right to lay down and maintain its tracks on said Turnpike
road.   The contention of the appellant is that as there was
no evidence to show that the city owned Walbrook avenue
where it crosses the Liberty road the ordinance does not ap-
ply.   But the evidence does show, or tend to show, that Wal-
brook avenue where it crosses Liberty road and Liberty road
are much used thoroughfares within the city limits, and that,

within the meaning and purpose of the ordinance, Walbrook
avenue was just as much an "open street within the limits
of the City of Baltimore" as it would have been if the city
had owned the fee in the bed of the street where it crosses
Liberty road. The object and purpose of the ordinance was
to guard against accidents at street crossings, and to that end
to prohibit those in charge of a car from crossing a street at
a speed greater than six miles an hour, and was evidently in-
tended to apply to the crossing of any open street within the
city limits, whether the city owned the bed of the street at
the crossing or not. It would be giving the ordinance rather
a narrow construction, when taking into consideration its
object and purpose, to hold that it did not apply to a crossing
of a street simply because the city did not own the fee in the
bed of the street at the crossing, notwithstanding the street
and crossing are used in all respects as one of the open streets
of the city, and we cannot therefore accept the view that the
ordinance does not apply to the crossing at Walbrook avenue
and Liberty road, which all of the evidence shows or tends
to show, has been used for a number of years as one of the
streets and thoroughfares of the city. If a similar accident
should occur at the crossing of Charles and Baltimore streets
by reason of the running of a car on Baltimore street over ·
said crossing at a higher rate of speed than the ordinance
permits, it is clear that it would not be necessary, before of-
fering the ordinance in evidence, to show that the city owned
the bed of the streets at the crossing. For the same reason
it was not necessary in this case, where the evidence shows
that the crossing in question has been used as a street for a
number of years, to prove that the city owned the bed of Wal-
brook avenue at the crossing.

From what we have said in regard to the second exception,
it is apparent there was no error in granting the plaintiff's
first and second prayers as modified. Plaintiff's first prayer
as modified amounted to an instruction that if the jury found
that the accident occurred on Walbrook avenue where it

crosses Liberty road, in Baltimore City, and that said cross-
ing had, for a number of years, been used by the public "in
all respects as one of the streets of Baltimore City," and
that while driving over said crossing the plaintiff was struck
by one of defendant's cars and injured, and that said "in-
jury resulted directly" from the negligence of the defend-
ant and not from any negligence on the part of the plaintiff
directly contributing to the injury, "then the plaintiff was
entitled to recover." As we have stated, the evidence shows
that the city owned the bed of Walbrook avenue up to the
point where it crosses Liberty road; that Walbrook avenue
and Liberty road were much used thoroughfares within the
city limits, and that that part of Walbrook avenue which
crosses Liberty road has been used by the public "in all re-
spects" as a city street for a number of years. It was, there-
fore, the duty of the defendant in running its cars over said
crossing to exercise the same care as would have been re-
quired of it had the city's title to the bed of Walbrook ave-
nue extended across Liberty road. Plaintiff's second prayer
as modified follows the form of a prayer approved by this
Court in *United Ry. Co. v. Biedler,* 98 Md. 564. Plaintiff's
third prayer is the usual prayer for damages in such cases.
and the exception to it was not pressed in this Court.
Plaintiff's fourth prayer instructed the jury that if they
found that the accident happened as testified to by the plain-
tiff, James Ward, "then the verdict must be for the plaintiff."
That form of instruction was condemned by this Court in
*United Rys. Co. v. Corbin,* 109 Md. 460, and should, for the
reasons there stated, have been rejected.

Defendant's seventh prayer (the Reporter is requested to
set out the granted prayers of the plaintiff and the rejected
prayers of the defendant and defendant's eleventh prayer as
modified in his report of the case), was calculated to mislead
the jury and was properly rejected. The jury might under
the circumstances, have concluded that the instruction meant
that if the motorman saw the plaintiff approaching the tracks

he had a right to assume that the plaintiff would stop and let
the car pass, and that no further care or caution was required
of him in running his car over the crossing.

The defendant was not prejudiced by the modification of
its eleventh prayer. The motorman testified that when he
saw the appellee pull up his horse and afterwards hit the
horse with his whip the appellee was west of the southbound
track, and the prayer was modified so as to meet the evidence
offered by the defendant.

Because of the error in granting the plaintiff's fourth
prayer the judgment of the Court below must be reversed,
and a new trial will be awarded, in accordance with the pre-
vious order passed in this case.

*Judgment reversed and new trial awarded.*

BRISCOE, PEARCE and SCHMUCKER, JJ., dissent as to the
rulings on contributory negligence.