GROSS *v.* BALTIMORE TRANSIT COMPANY
[No. 78, October Term, 1948.]

280

*Decided February 10, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*W. Hamilton Whiteford,* with whom were *Jacob A. Gross* and *Due, Nickerson & Whiteford* on the brief, for the appellant.

*Philip S. Ball* and *J. Nicholas Shriver, Jr.,* for the appellee.

MARKELL, J., delivered the opinion of the Court.

From a judgment *n. o. v.* for defendant in an action for personal injuries and property damage from collision of plaintiff's truck and defendant's street car at the intersection of Tioga Parkway and Reisterstown Road in Baltimore, plaintiff appeals.

At this place Reisterstown Road runs approximately north and south along the western boundary of Druid Hill Park. It is about 76 feet wide from curb to curb, including two driveways for vehicular traffic, paved with asphalt, each 24 feet wide, on either side of defendant's tracks. The tracks are of open T-rail construction. East and west of the tracks are unimproved strips, 4 feet 8 or 10 inches wide. At the northern end of the east strip at the south side of Tioga Parkway, and at the southern end of the west strip at the north side, are safety platforms for passengers. Tioga Parkway is 32 feet wide from curb to curb. It runs west from the east side of Reisterstown Road, i. e., it runs east to, but not into, Druid Hill Park. It is the first street crossing Reisterstown Road north of Liberty Heights Avenue, some 600 feet distant. From Liberty Heights Avenue the grade of Reisterstown Road is up to a crest and then moderately down to Tioga Parkway. The crossing is paved but, plaintiff says, is "very rough." Photographs show some roughness.

Plaintiff is engaged in the fruit and produce business. On the morning of July 9, 1946 he had driven his truck to the wholesale produce market and had bought a load of fruit and vegetables, which he had put on shelves on his truck. The truck is about 18 feet long. Between 8 and 9 o'clock he had reached Reisterstown Road and

was driving north from Liberty Heights Avenue toward Tioga Parkway. He says he was going "at a moderate rate of speed", "around twenty miles an hour or so"; as he got to Tioga Parkway he "slowed down to a drift" and opened his left hand door "to look out to see if there was a street car coming, and there was one coming right over the hump"; when he looked, the car was "about 300 feet" from him and he was about 10 feet from the crossing [i.e., the south curb line of Tioga Parkway]; after he looked back to see the car he "slowed down to a drift and put it in second gear" and proceeded to cross the tracks to the west, and the car struck the left rear of the truck; he was "going very, very slow pace", because the crossing was "very rough" and he did not want to disturb any of the merchandise he had on the truck; he did not hear any bell or signal "until it struck", then he heard the bell; the truck was upset and then lay on the far side of the south-bound tracks; the collision was a glancing blow and then the truck was "sort of shoved over" to the south-bound tracks; after the car hit, he does not remember just what happened, he was more or less in a daze; before he turned to cross the tracks he did not hold out his hand or give any signal "because the street car was a sufficient distance from" him; he never saw the car again after he saw it over the brow of the hill; nothing obstructed his view to the south as he crossed the tracks.

Mrs. Rubin, a witness for plaintiff, at the time of the collision was standing on the safety platform at Tioga Parkway, waiting for a northbound car; three cars (presumably full) had passed her without stopping. She says, "this was the fourth coming along, speeding so fast that he almost blew me off the corner and he made no attempt to stop"; "it came down with full speed from Liberty Heights and Reisterstown, right down with full speed, never made no attempt to stop"; she had seen it strike the truck; "the truck was three-quarters over the track and it struck it right over the end of the truck, and it pushed it, it moved it further up and I saw the end of the car and it made such a crash I though a bomb burst,

and before I had time to look again I saw things flying in the air, all the fruit and vegetables were scattered all over Reisterstown Road"; after the truck came to rest it was blocking most of the south-bound automobile lane; after the collision the street car stopped, it remained there, but it was pulled further up from where she was standing, "quite several feet", about forty. The street car was about forty feet long.

Plaintiff's evidence as to the happening of the collision is flatly contradicted by defendant's witnesses, but on motion for a directed verdict or for judgment *n. o. v.* must be taken as true. Plaintiff, however, puts some reliance on a statement by the conductor of the street car on cross-examination. The motorman and the conductor say the car was going down from the crest at about 18 or 20 miles an hour. The car was of the old two-man type; it had 60 or 70 passengers. The motorman says the car and several motor vehicles had been stopped by a traffic light at Liberty Heights Avenue; he first saw plaintiff's truck "at the top of the hill", about ten feet ahead of the car, east of the tracks in the vehicular driveway; the truck maintained the same speed down the hill; he saw Mrs. Rubin standing at the north end of the 90 foot safety platform; at the south end of the platform he slowed down to make a stop so that the rear end of the car would stop where she was standing; when plaintiff's truck turned in front of the car, the front of the car had passed the south line of Tioga Parkway about five or six feet and was no more than six or seven feet from the truck; he barely had time to put on the emergency brake; he made the stop there and "didn't move hardly a couple of feet after it was done"; plaintiff's truck "cut over on an angle". The rear left wheel of the truck struck the car on the curve of the bumper at the right hand corner, the truck kept going all the way around in front of the car until it got into the T-rail of the southbound tracks and then it "tumbled over". The conductor, on cross examination, was asked whether he had "ever driven street cars," and said he

had. Against objection he was asked, from his "experience as a motorman", whether he could tell within what distance a street car of this type, going 18 or 20 miles an hour, on such a grade as this, could stop, and replied "I couldn't exactly tell you". Asked, "Can you approximate it?" he said, "I'll say you could stop in about 15 feet.

Against objection plaintiff offered in evidence Ordinance No. 592 of 1920-1921, Baltimore City Code 1927, Art. 39, sec. 69: "When approaching and crossing any intersecting public highway or private street, the person operating a street car must have the same under control and must regulate the speed of said car according to what is reasonable and proper in view of the circumstances, surroundings and location; Provided, however, that in crossing any such street or intersecting Public Highway or Private street in the thickly congested or business parts of the City, such street car shall not be operated at a rate of speed exceeding fifteen miles an hour." Plaintiff testified that the "surrounding area" at Reisterstown Road and Tioga Parkway is "residential". There is no evidence that it is a "thickly congested or business part of the city"; the photographs show that it is not. The fifteen mile proviso is inapplicable, and the ordinance does not fix a speed limit or add anything to the reciprocal duty of due care on the part of both plaintiff and defendant. There is no evidence that the motorman did not have his car under control. The fact (which plaintiff stresses) that Reisterstown Road may be regarded as an "arterial highway" through the city and counties only illustrates (a) the need for "rapid transit" permitted in the open country and even within the city limits when the tracks are separated from the travelled way, and (b) the application of the "stop, look and listen" rule in the circumstances. *Crawford v. Baltimore Transit Co.*, 190 Md. 381, 386, 387, 58 A. 2d 680, 682, 683.

There is no evidence of excessive speed except Mrs. Rubin's testimony that the car came down with "full speed" and "almost blew her off the corner" and the implication plaintiff seeks to convey that the car covered

300 feet in a miraculously short time. Neither Mrs. Rubin's testimony nor plaintiff's shows what the speed of the car was. "It is difficult, if not impossible, 'to judge the speed of an oncoming car' ". It was not negligence *per se* to come down with "full speed". *Crawford v. Baltimore Transit Co., supra.* Failure to stop the car for Mrs. Rubin was not negligence; nor was failure to ring the bell, as plaintiff had seen the car. *Westerman v. United Railways & Electric Co.,* 127 Md. 225, 230, 231, 96 A. 355.

Plaintiff's testimony conclusively shows that, even if we assume, without deciding, that there was some evidence of excessive speed on the part of the street car, plaintiff directly caused or contributed to the collision by "failing to look again before he ventured upon the tracks". "It was not only his duty to look before starting to cross the intersection but to keep on looking until the track, the real point of danger, was reached." *Crawford v. Baltimore Transit Co., supra,* 388 [58 A. 2d 683]. The event shows that he miscalculated. It is not possible from his testimony to say how fast the car, or how fast— or how slow—the truck, was going. He says he was 10 feet from the south curb line of Tioga Parkway when he looked. From the south line of Tioga Parkway he had to go some part (properly at least half) of 32 feet north and some part of 24 feet west to swing his 18 foot truck perpendicular to Reisterstown Road (or nearly so) and about 5 feet more to reach the track. Until he went upon the track in front of the car the motorman had no reason to assume that he would do so. *Crawford v. Baltimore Transit Co., supra.*

The instant case is governed by the *Crawford* case and the earlier cases there cited and discussed. We need not further repeat what was there said. *United Railways Co. v. Ward,* 113 Md. 649, 77 A. 593, and *Barnes v. United Railways Co.,* 140 Md. 14, 116 A. 855, upon which plaintiff relies, are sufficiently discussed and distinguished in the *Crawford* case. Plaintiff would excuse his failure to look because he would have had to look behind him, whereas the plaintiff in the *Crawford* case was approaching the

tracks at a right angle. If this difference is material, we think plaintiff was the more negligent. *Cf. Phillips v. Washington & Rockville Railway Co.,* 104 Md. 455, 458, 65 A. 422, 10 Ann. Cas. 334. Plaintiff must, or at least should, have turned to a right angle position (or nearly such) before crossing the tracks. It was imperative that he look *after* making this turn. In the *Barnes* case, *supra,* no question of contributory negligence was presented; the plaintiffs were the conditional vendor and another lienor, not the purchaser, of the truck in question and were not employers of the chauffeur.

Plaintiff invokes the "last clear chance" doctrine. There is no evidence where the car was when the motorman first saw or could have seen plaintiff's truck in peril, *i. e.,* on the track, except testimony of defendant's witnesses that when plaintiff's truck turned in front of the car, the car was not more than from six to ten feet from the truck. In short, if there is any evidence of negligence on the part of defendant, then according to either plaintiff's or defendant's version of the collision, "The negligence of each was identical, and concurrent, and neither can be said to have had a 'last clear chance' to avoid the consequences of the negligence of the other  *  *  *". *Campbell & Sons v. United Railways & Electric Co.,* 160 Md. 647, 652, 154 A. 552, 555, quoted in the *Crawford* case, *supra.*

It is, therefore, unnecessary to decide (a) whether the conductor was qualified to express an opinion as to the possibility of stopping the street car, going 18 or 20 miles an hour, within 15 feet, (b) whether his expression of opinion was, on its face, more than a guess, (c) whether such an opinion should be disregarded as contrary to common knowledge or to judicial knowledge from evidence on such questions in many previous cases (*cf. Holmes, The Common Law,* pp. 111-115) or (d) whether defendant would be justified in imperiling the lives and limbs of its passengers by making such a stop if it could. *Charlton Bros. Transfer Co. v. Garrettson,* 188 Md. 85, 51 A. 2d 642.

*Judgment affirmed, with costs.*