LEWIS ET AL. *v.* BALTIMORE TRANSIT CO.

[No. 176, October Term, 1948.]

*Decided June 9, 1949*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*I. Duke Avent* and *Edgar Paul Boyko,* for appellants.

*Walter V. Harrison,* with whom was *Philip S. Ball* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

The question in this case is whether the jury should have been permitted to consider the two cases involved in this appeal (tried together), or whether the trial court was correct in directing it to enter a verdict in favor of the defendant in each case. It is an appeal by the plaintiffs, one of whom sued for personal injuries, and the other for damages to his automobile.

On October 18, 1947, early in the afternoon, the plaintiff in one case, Lewis, who is a physician, was driving an automobile owned by his father-in-law Anderson, the plaintiff in the other case, in a westerly direction along Edmondson Avenue, which is a public through highway in the City of Baltimore. When he passed Glenn Allen Drive, which enters Edmondson Avenue from the north at approximately a right angle, he noticed a gathering of people in that street near a car. He thought there might have been an accident, so he decided to turn around and to go back to investigate. He continued along the northern traffic lane of Edmondson Avenue, beyond Glenn Allen Drive, to the next street, which is about 343 feet away. At this street he made a "U-turn", and as he did, he saw a trolley car standing at the corner of the next street above, which was about 350 feet away, and which was approximately 700 feet west of Glenn Allen Drive. At that time the trolley car was stationary, and engaged in taking on passengers. After Dr. Lewis had made his turn, he proceeded east along the southern lane of Edmondson Avenue.

The two traffic lanes of Edmondson Avenue are separated by an open track construction of the Baltimore Transit Company street car line. This open track construction continues to a point about 19 feet west of the Glenn Allen Drive curb line. At this point the street car tracks are paved, and blend into the road bed of Edmondson Avenue. When Dr. Lewis approached the intersection of Edmondson Avenue and Glenn Allen Drive, at the end of the open track construction, and about 15 feet before he reached that intersection, he looked through his rear view mirror, and saw three automobiles behind him, and also a trolley car about one half block behind him. He put out his left hand and pulled over to the left. He testified that when he did this, his car came to rest on the east bound track of the appellee at the intersection of Edmondson Avenue and Glenn Allen Drive. His left wheels were to the left of the left hand rail and his right wheels were to the right of the

rail, which he was thus straddling. He stated that this point was about five feet from where the paved bed of the street car tracks commenced, so that he had gone the fifteen feet, and this five feet, and had crossed over from the east bound automobile lane across about one half of the east bound car track. He was asked how long he remained in that position, and he said that there were automobiles passing in front of him on Edmondson Avenue, going west, and that there was time enough for three or four automobiles spaced about ten feet apart to pass after he stopped. He judged it was less than two minutes, or one or two minutes approximately. The trolley car then struck him from behind, his father-in-law's car was damaged, and he was injured. The rear bumper was struck first, then the left rear fender was hit, and then the left rear wheel. He said that when the car was struck, he was heading east more than any other direction, so that it was on an angle. He heard no signal from the street car, nor any brakes or warning of any kind. On cross examination, Dr. Lewis was asked whether he had not testified in a pre-trial examination that before he started to turn, he had observed two automobiles about ten to 20 yards behind him and had seen the trolley car about 30 yards behind him. This, he said, he had observed as he turned into the left hand lane, which was some place between the end of the paving and about five feet beyond. He later said that when he said the street car was about 30 yards behind him, he said so approximately. He thought the city block was about 100 yards, so that it was between 30 yards and 50 yards. He also later said that when he made his turn, that is, after he had reached the end of the open track, and had gotten on the pavement, he had presumed that the street car was somewhere between 30 yards behind and the 10 yards that he had advanced. He said he did not watch the trolley car, as he had to look in front of him when he drove. He stopped on the car track because Edmondson Avenue was a boulevard, cars were going in a westerly direction, and he could not get across until

they had passed. He said he did not stop on the west bound track because street cars were moving on it, but he admitted that he could see four or five city blocks from the position in which he stopped, and that there was then no west bound cars in sight. Later he was recalled in an attempt to show that when he first put out his hand, the street car was half way down the block. The Court at first refused to permit such evidence, and a proffer was made to show, through his testimony, that the street car was located at the half-way mark in the block, and that distance would be approximately 170 feet. The Court finally gave permission to ask him that question, but it was not asked, and no such testimony was given.

On this state of the record the trial court took the case from the jury. The appellants, while contending that Dr. Lewis was not guilty of any contributory negligence when making the turn and stopping when he did, contend that the motorman of the trolley car of appellee was guilty of negligence in striking him when he was standing motionless on the track. Whether we consider this primary negligence, or whether we view it from the standpoint of the doctrine of last clear chance, the answer depends on where the street car was when the motorman saw or could have seen the car on the track in front of him. There is no evidence whatever as to this, and there is no evidence whatever of the speed of the trolley car. It was traveling on an open track in what the photographs show was not a thickly settled or congested part of the city, there was no speed limit prescribed under such conditions, and the only duty upon the operator was to have his car under control, and to regulate its speed according to what was reasonable and proper in view of the circumstances, surroundings and location. *Crawford v. Baltimore Transit Company*, 190 Md. 381, 58 A. 2d 680.

We had occasion in a recent case to discuss a somewhat similar situation which occurred on the Reisterstown Road, similar in many respects to Edmondson

Avenue. In that case a plaintiff was driving a truck, saw a street car 300 feet from him when he was ten feet from the crossing, slowed down to a drift, put the truck in second gear, and started to make a left hand turn and cross the track. He was going very slowly, and heard no bell or signal until the trolley car struck his left rear. We held in that case, following *Crawford v. Baltimore Transit Co., supra,* that it was his duty, not only to look before starting to cross the intersection, but to keep on looking until the track, the point of danger, was reached, and that the event in that case showed that plaintiff miscalculated. *Gross v. Baltimore Transit Co.,* 192 Md. 278, 64 A. 2d 147. The event in the case before us shows the same thing. The plaintiff looked about 20 feet before he made his turn, and whether the street car was then 90 feet or 170 feet away, he evidently did not know how fast it was coming, and did not bother to look to see whether he had time to cross. He did not go very slowly as the plaintiff in the *Gross* case did, but he did worse. He went to the exact point of danger, and there stopped.

It is suggested that the street car had no right to strike the plaintiff from the rear, no matter how great the negligence of the plaintiff in putting himself on the car track. In support of this general proposition, the case of *Beck v. Baltimore Transit Co.,* 190 Md. 506, 58 A. 2d 909 is cited. In that case, however, a taxicab had stopped quite close to a street car track, the operator of the street car saw it, reduced his speed to two or three miles an hour, while he looked to see if he could get by, thought he could, attempted it and found that his calculation was wrong and hit the cab. We held that the facts were properly submitted to the jury, but they are clearly distinguishable from those in the case at bar. Here we have no evidence of any opportunity given to the motorman to determine whether or not he could avoid striking the object in front of him. On the contrary, he might have been coming at such a rate of speed that there was no possibility of his avoiding the plaintiff's car when it

stopped. The testimony of Dr. Lewis as to the time he remained on the track is quite inconclusive and contradictory. Certainly, it did not take two minutes or even one minute for four cars, ten feet apart to pass. That would be at the most 30 feet, plus the length of the four cars, or about 90 feet. There is no evidence that the cars were traveling slowly, and to suggest that they would take from one minute to two minutes to pass is to get into the realm of quite absured speculation. A car traveling at the rate of 25 miles an hour, which is certainly as slow as the usual travel on a boulevard street in the outskirts of a city, will travel 90 feet in less than three seconds. Or, taking it the other way, a car which takes a minute to go 90 feet, is traveling at about the rate of a mile an hour. On this point, we think that the statements of Dr. Lewis are so clearly contradictory, that they do not form a basis from which the jury could have reached any rational conclusion. *Eisenhower v. Baltimore Transit Co.*, 190 Md. 528, 59 A. 2d 313.

The plaintiff in the *Anderson* case is not bound by the negligence of Dr. Lewis, but in order to permit his case to go to the jury, it is necessary, either that there be evidence of primary negligence on the part of the trolley car, or evidence from which there can be an application of the doctrine of last clear chance. The evidence of Dr. Lewis as to the distance of the trolley car from the intersection when he made his turn, is almost as inconclusive as his evidence on the question of how long he was stopped before he was hit. We have shown that he said first 30 yards, then between 30 and 50 yards, and then one-half block, although he did not testify after having received permission to explain these apparently contradictory statements. But, if we give the plaintiffs the benefit of all possible inferences, and assume that the street car was actually 170 feet away when Dr. Lewis started to make his turn, there is, as we have said, nothing to show how fast the street car was going, and nothing to show that it could have stopped when the motorman became aware, or should have become aware,

that Dr. Lewis was going to stop in front of him. Even had the motorman seen him, he might readily have assumed that he was going to continue across to the westbound trolley track, since there were no cars approaching on it. In such a position the automobile might have been safe, both from the trolley car and from the traffic going west on Edmondson Avenue. We do not, however, have to speculate about this, and the jury should not be allowed to speculate about it. The fact is that there is no evidence to show that the motorman of the trolley car was in any way negligent, and there is no evidence that he had the last chance to avoid the accident. Since that is so, on this ground, both the *Lewis* case and the *Anderson* case should have been withdrawn from the jury, as they were.

*Judgments affirmed with costs.*