# UNITED RAILWAYS AND ELECTRIC CO. OF BALTIMORE

*vs.*

## WILLIAM B. MANTIK.

*Death from negligence*: *damages under Code, Article* 67; *pecu-
niary loss only; death of child; "due care"; primary and
contributory: province of jury; electric cars and
motor trucks; duty of driver and motorman;
speed of cars. Prayers: inconsist-
ent with facts.*

The rights and duties of the operators of electric cars and of
motor trucks in their use of the streets are co-extensive and
reciprocal.                                                    p. 200

It is as much the duty of the motorman to exercise due care
in running the cars over crossings, as it is the duty of a motor
truck driver to act prudently in the management of the motor
vehicle, as it draws near a point of possible danger.         p. 200

Where there is some evidence of negligence both on the part
of the plaintiff and of the defendant, the question of primary
and contributory negligence is properly left for the considera-
tion of the jury.                                             p. 201

Prayers which are inappropiate to the proven facts are prop-
erly rejected.                                                p. 203

In an action for damages for the death of a child, who was
killed by a collision between the electric car of the defendant
corporation and the motor truck in which the child was riding,
it was: *Held*, that the expression, "due care of the person ac-
companying" the child, was not rendered erroneous for vague-
ness by the fact that both the child's grandfather and the chauf-
feur were in the motor truck with him, when one of the defend-
ant's prayers had been granted leaving to the jury the fact that
the child was riding on the truck "in company with the chauf-
feur."                                                        p. 204

In an action of damages against a railway company for injuries caused by a collision by one of its cars, evidence of the high rate of speed of the car at the time is admissible.          p. 205

In an action for damages for injuries resulting in death, brought under Article 67 of the Code, recovery is limited to the pecuniary losses sustained by the plaintiff as the result of such death.                              p. 205

In an action of that character for the death of a child, evidence may be given that the parents had younger children, for whom the child that was killed used to assist in caring.  p. 205

*Decided December 2nd, 1915.*

Appeal from the Court of Common Pleas of Baltimore City.  (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Albert Rhett Stuart* and *Arthur L. Jackson* (with whom was *Lee S. Meyer* on the brief), for the appellant.

*George Moore Brady* (with whom were *William Milnes Maloy* and *William Joseph Tewes* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The nine-year-old son of the equitable plaintiff was killed in a collision between his father's motor-truck, on which he was riding, and an electric car of the appellant railway company.  The accident occurred on Seventh Street in Highlandtown about five-thirty o'clock on the afternoon of June 20, 1914.   As the motor-truck entered Seventh Street from Claremont Street on the west, it was struck by the electric car as it was passing in a southerly direction, and the little

boy, who had occupied a place between his grandfather and the chauffeur on the seat of the truck, was thrown under the wheels of the car.

The principal questions in the case are: First, whether there is legally sufficient evidence to show that the collision was due to any negligence chargeable to the railway company, and, secondly, whether the proof justifies a judicial determination that the chauffeur operating the truck was guilty of contributory negligence.

No evidence was offered by the defendant, and there is no contradiction in the testimony as to the facts of the case. The motor-truck, weighing, with its load of canned tomatoes, upwards of seven tons, was being driven at a moderate speed as it approached the place of the accident. It was the purpose of the chauffeur to turn north on Seventh Street after entering it from Claremont Street, which terminated at that point. In order to accomplish this movement he intended to drive across the electric railway track, which was located along the middle of Seventh Street, and then proceed northwardly on the right-hand side of that thoroughfare. As he was nearing Seventh Street he sounded his horn and reduced the speed of the truck. There were trees along the sidewalk on the west side of Seventh Street, to the north, which obstructed his view of the track in that direction. The first opportunity he had to look northwardly along the track was when the front wheels of the motor-truck were passing over the gutter extending across the end of Claremont Street, and when the forward end of the truck was distant only six or seven feet from the west side of the railway. The chauffeur then for the first time saw an electric car, with a second one attached, coming southwardly towards the crossing at high speed. The leading car was then approximately forty-four feet from the point at which the truck was about to cross. No signal of the approach of the cars had been given, and no attempt appears to have been made to lower the excessive speed, as shown by the proof, at which they were moving.

In an effort to avoid a collision the chauffeur turned the motor-truck towards the south, but its momentum, which he said there was not time enough to overcome with the brake, carried it partly over the west rail of the track and the foremost car struck it in the region of the left front wheel. The forward portion of the car was thrown off the track as a result of the impact, the rear wheels remaining on the rails. After the collision the front of the car rested against a trolley pole to the east of the track and about seventeen feet distant. The rear car was not derailed. The cars were in charge of a motorman and shopman who hurriedly left the scene of the accident immediately after its occurrence.

Upon the facts thus detailed the Court could not rightfully declare either the absence of primary, or the presence of contributory, negligence. To hold as a matter of law that the running of the electric cars over the street crossing in question, at the immoderate speed shown by the evidence, and without warning of their approach, was not an act of negligence, or that it had no causal relation to the collision, would be manifestly improper; and there was certainly no such obvious and conclusive want of care and prudence in the conduct of the chauffeur as to justify the withdrawal of that issue from the consideration of the jury.

The respective rights of the operators of the electric cars and the motor-truck to the use of the street were co-extensive, and their duties in reference to the observance of precautions against injury were reciprocal. *United Rys. Co.* v. *Watkins,* 102 Md. 267; *Cooke* v. *Balto. Traction Co.,* 80 Md. 554. It was just as incumbent upon the motorman to exercise due care in running the cars over the crossing, as it was upon the chauffeur to act prudently in the management of the motor-truck as it drew near to that place of possible danger. A due regard for the interests of those having an equal right to the use of the crossing required that the usual signal should have been given as the cars approached the junction of the streets, and that their speed should have been reduced

and under ready control, especially as the presence of trees in foliage obstructed the view of the track from the position which the drivers of motor-trucks and other vehicles are accustomed to occupy. If such a degree of care had been observed in the operation of the cars, it appears reasonably probable, from the evidence, that the collision would have been obviated. When the chauffeur could for the first time see the cars, and when the motorman first saw, or could have seen the motor-truck, the cars were distant about forty-four feet, and the truck not over seven feet, as already noted, from the point where they would collide unless the onward course of either the cars or the truck was arrested. The absence of any warning signal of the cars' approach might naturally have induced the chauffeur to proceed further than he would otherwise have gone towards the crossing, and the "full-speed," as described by one of the witnesses, at which the cars were moving, doubtless made it impossible for the motor-man to prevent the collision, by checking the motion of the cars in the time and space available, after the danger became apparent. As the case is presented by the record, we can have no doubt that the issues of primary and contributory negligence were questions of fact for the jury, and that they should not be determined as a matter of law by the Court. *Consolidated Ry. Co. v. Rifcowitz,* 89 Md. 342.

It is insisted on behalf of the defendant that the chauffeur saw the oncoming cars when the truck was in a position of safety and under such control that it could have been stopped in time to avoid the accident, and that it was driven onward in the hope that it might clear the crossing ahead of the cars. Upon this theory as to the facts, it is urged that the speed of the cars, and the failure of the motorman to give signals, did not constitute the proximate cause of the collision, and hence should be disregarded as a ground of lia-bility. The position into which the front car was forced, and the fact that the child was thrown under the car, are circum-stances which are said to support the view that the truck

ran into the side of the car as the result of an attempt by
the chauffeur to drive over the track before the car reached
the crossing, and of a miscalculation on his part as to the
time available for that purpose.   The difficulty with this
theory is that in order to adopt it, as legally controlling in
the case, we should have to ignore the positive proof to the
contrary.   The chauffeur and other witnesses testified explic-
itly that the car collided with the left side of the truck as the
latter was being turned to the right.   It would be competent
for the jury, in reaching its conclusion, to consider the par-
ticular conditions to which the defendant refers, but they
are not sufficiently convincing to be regarded by the Court as
determining factors in the case and as destroying the proba-
tive force of the testimony given by the eye-witnesses

Upon the question as to the ability of the chauffeur to
avoid the collision by arresting the movement of the motor-
truck after he saw the cars approaching, the defendant relies
upon testimony by the chauffeur to the effect that the front
wheels of the truck were in the gutter on the west side of
Seventh Street when he first observed the cars, and that the
truck could have been stopped within "two feet" by the use
of the emergency brake.   This was a part, but it was not the
whole of the chauffeur's testimony on that subject.   He re-
peatedly stated that the use of the brake would not have
enabled him to stop the truck in a place of safety.   By his
estimate the distance from the middle of the gutter to the
west rail of the track was four or five feet, and the truck
extended three or four feet beyond the front axle.   The point
he was trying to emphasize was that the truck was too near
the railway for him to avoid a collision by using the brake,
although he did use it as a last resort, and that the only way
by which he could hope to prevent the accident was to swing
the truck around to the side.   This being the clear meaning
of his testimony as a whole, we ought not to neutralize its
effect by segregating and giving decisive force to an expres-
sion which may be supposed to vary from the general

idea sought to be conveyed. It appears from the affirmative and uncontradicted evidence in the case that the chauffeur made prompt and strenuous efforts to avoid the collision as soon as he was aware of the danger, and we could not justly hold, upon this record, that he was guilty of negligence contributing to the unfortunate event. There is no prominent and decisive act of negligence proved, in reference to the chauffeur's conduct, which would require such a conclusion. *United Rys. Co.* v. *Ward,* 113 Md. 655; *Taxicab Co. of Balto.* v. *Emanuel,* 125 Md. 259.

The Court below refused to grant instructions to the jury, as proposed in varying forms, by the defendant's first, second, third, sixth, seventh, eighth, eighteenth and nineteenth prayers, that there was no legally sufficient evidence to entitle the plaintiff to recover, or to show that the accident was caused by any negligence of the defendant's employees; and declaring also that contributory negligence on the part of the chauffeur was established by the proof. In this ruling we fully concur.

The defendant's fourth and fifth prayers sought to have the jury instructed that there was no legally sufficient evidence to show that after the truck reached a point of danger, the motorman in charge of the cars could have prevented the collision by the use of ordinary care, and the verdict should therefore be for the defendant. This prayer was inappropriate to the proven facts, and its rejection was clearly proper.

The ninth, tenth, eleventh, twelfth, thirteenth and fourteenth prayers of the defendant were granted. They fully and correctly submitted the issues of primary and contributory negligence to the jury.

There was no evidence to support the main theory of the defendant's fifteenth prayer, and a special exception on that ground was properly sustained.

By its sixteenth prayer the defendant asked a direction that a verdict be rendered in its favor if the jury found that the collision was caused by the failure of the chauffeur to

apply his emergency brake when he first saw the cars approaching. The testimony of the chauffeur was emphatic and undenied to the contrary, and his instant and diligent effort to escape the danger indicates that he was anxious to employ the most practicable means to that end. Under such circumstances, and upon the evidence before us, it could not fairly be held that the chauffeur's decision, in the stress of the emergency by which he was suddenly confronted, to use the steering wheel instead of the brake to accomplish the object for which he was striving, should be treated as a controlling factor in the determination of the question as to the right of recovery.

Two instructions were granted at the instance of the plain-tiff. The first permitted a verdict in his favor if the jury should find that the death of his son resulted from the want of ordinary care on the part of the defendant's motorman, provided it were found that the accident could not have been avoided by the exercise of such care by the child as might be reasonably expected from one of his age, or by the use of ordinary care and caution by the "person accompanying" the child. While both the grandfather of the little boy and the chauffeur were with him at the time of the accident, any question which might have arisen in the minds of the jury as to who was intended by the prayers as the "person accompanying" him, would have been answered by a granted prayer of the defendant which instructed the jury that if the chauffeur was guilty of negligence directly contributing to the accident, and if the son of the plaintiff was riding in the truck at the time "in company with the chauffeur," and with the consent of his father, then the negligence of the chauffeur, if found, would entitle the defendant to a verdict. No criticism of the plaintiff's prayers in other respects was suggested in the argument, and we do not think they were open to any valid objection.

There are six exceptions yet to be disposed of, relating to the admissibility of certain testimony. The first, second and

third refer to descriptions of the high rate of speed at which the cars were traveling as they approached the place of the collision. The propriety of the admission of this testimony, as given by the witnesses of the accident, is fully supported by the ruling of this Court in *United Rys. Co.* v. *Ward,* 113 Md. 649.

The testimony to which the fourth and fifth exceptions were reserved was subsequently stricken out by the Court on its own motion.

The sixth exception was taken to the action of the Court in allowing the plaintiff, over the defendant's objection, to state the number and ages of his other children. It was the evident purpose of this testimony, in connection with that which immediately followed, to show that the plaintiff had smaller children who, in the lifetime of the deceased son, had been entrusted to his care after school hours, the expense of an attendant being thus saved and the mother left free during that period to aid her husband at his canning factory. The facts thus proven were directly pertinent to the question as to the extent of the pecuniary loss sustained by the plaintiff in consequence of his son's death, and as the right of action in such cases is based upon the theory that recovery is limited to a loss of that character, we see no reason why the evidence excepted to, when offered for the specific purpose mentioned, should be excluded. *Code,* Art. 67, sec. 2; *Coughlin* v. *B. & O. R. R. Co.,* 24 Md. 84; *Agricultural and Mechanical Assoc.* v. *State,* 71 Md. 100; *Tucker* v. *Johnson,* 89 Md. 479; *Elder* v. *B. & O. R. R. Co.,* 126 Md. 497.

*Judgment affirmed, with costs.*