## BALTIMORE TRANSIT COMPANY *v.* RICHARD L. ALEXANDER

[No. 20, April Term, 1937.]

*Decided May 24th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Edward J. Colgan, Jr.*, with whom were *Charles A. Trageser* and *Philip S. Ball*, on the brief, for the appellant.

*Daniel S. Sullivan*, with whom was *Daniel S. Sullivan, Jr.*, on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal on this record is based upon the contention that there was no legally sufficient testimony for the case to have been submitted to the jury, on the theory that the plaintiff had failed to establish primary negligence on the part of the defendant or was barred because of his own negligence. The action was for the recovery of damages for personal injuries which were sustained by the driver of a motor truck in a collision with a street car of the defendant corporation. The plaintiff sued on his own behalf and to the use of the State Accident Fund, and obtained a judgment. The scene of the accident is on Belvedere Avenue in Baltimore City, where the defendant has its double line of railway tracks laid lengthwise in the center of the highway. The railways are what is known as "open track T-rail construction," and, therefore, the railway right of way occupies the central portion of the avenue to the exclusion of all other travel, except at public street crossings. The northern track carries the westbound railway car traffic and the southern track is for the eastbound traffic. The eastbound lane of public travel on Belvedere Avenue is south of the railway tracks and the westbound lane of public travel is north of these tracks. These lanes of highway travel have an even, hard, and at the place of the accident a flat, surface. The defendant street railway carrier has, on the north side of Belvedere Avenue, at the place of the collision, a lot of land which faces on Belvedere Avenue for the

width of three blocks. On this lot, which is not traversed by any highways, are built a car house and parallel and loop car tracks for the turning or storage of street cars until their use in transportation service will be resumed. In order to move its cars from the main tracks for this temporary storage and turning, the carrier has constructed sidings which lead from the east and west bound tracks, across the westbound lane of travel on Belvedere Avenue, into the car house or yards. The sidings are built across the avenue so that their surface is at a uniform level with the surface of the highway.

The accident took place in the west lane of travel on the avenue between two of these sidings. The northern siding leaves the westbound main track on a curve to the right and crosses the west lane of travel on its way to defendant's property, where it unites with the second or southern siding. This second siding takes off from the eastbound main track on a curve to the left and also crosses the west lane of travel. The western lane of travel is here 23½ feet wide, and the distances between the inner rails of the two sidings are, 90 feet where the sidings leave the northern line of the defendant's right of way, which is also the southern margin of the west lane of traffic on the avenue, 64 feet along the center line of the west lane of travel, and 47 feet along the curb line of the avenue. Within the section of the avenue so bounded by the parallel lines of the curb and the northern limit of the railway, and, on the east and west, by the curved tracks of the sidings, the accident happened at about half past nine on the morning of October 23rd, 1935.

It was a cloudy, murky day, but the street was dry. The plaintiff was driving a truck which was twenty or twenty-one feet long and, with its load, weighed about six tons. His seat was eight and one-half feet from the front of the truck. The plaintiff was alone and was driving westward. He was an experienced driver, and knew the layout of the sidings and their use. As he drew near the scene of the accident, the siding from the

westbound main track was the nearer one to him and he saw on this siding a street car which was moving towards the lane on which he was proceeding at between twenty and twenty-five miles an hour.  In the expectation that the observed street car would move across the highway, the plaintiff sounded his horn to attract the attention of the motorman, and reduced the speed at which he was traveling to about ten miles an hour.  When the street car had been driven halfway across the avenue, the motorman stopped the car and gave the plaintiff a signal to drive over the switch in front of the car.  The plaintiff obeyed the signal, and, increasing his speed to eighteen or twenty miles an hour, and keeping close to the curb, drove the truck by the car, and, when the seat on the truck was about halfway the distance between the first and second sidings, saw for the first time another car at the northernmost rail of the westbound track coming extremely fast over the siding from the eastbound track. The plaintiff immediately put on his brakes, which were in good condition, and, in an effort to avert the collision, tried to turn the truck to the plaintiff's right, but, notwithstanding his prompt and proper efforts, the truck could not be stopped or diverted, but moved slowly on the tracks of the second switch, when, as the truck was almost stopped, with its front wheels between the rails and one wheel north of the curb line, the street car struck the truck on the plaintiff's left and opposite where the plaintiff sat.  The force of the impact drove the driver from his seat, knocked the door off, and turned over the truck with its load and injured the plaintiff.

The plaintiff further testified that the position of the intervening street car on the first siding prevented him from seeing a car on the eastbound track until the driver had passed the front of the first street car.  The plaintiff testified that he had not looked to his left until where he sat in the truck was about half the distance between the first and second sidings, with the front of the truck about ten feet from the siding it was approaching.  When he looked to the left and saw the second street car rapidly

moving onto the siding, he applied his emergency brakes, but the existing distance of about ten feet was too short in which to stop the truck, since a stop could not have been made in less than fifteen or twenty feet at the rate the truck was moving. The speed at which the truck was moving was not shown to be excessive, and while reasonable care on the part of the operator of a motor vehicle requires that he have the vehicle under such control as he approaches the tracks of a street railway that the vehicle may be stopped if necessary to avoid a collision with an approaching street car, yet, in the absence of legislative provisions, the control must be a reasonable control, depending upon the circumstanaces, and not an absolute control, so that the motor vehicle may be stopped immediately under all circumstances. Traffic regulations permit a speed which makes it impracticable for even a motor vehicle of low tonnage to be stopped instantly. The laws of physics will not permit it. So, the driver of the truck was not guilty of any negligence, unless it can be said that the delay in looking to his left until the driver's seat was midway between the two sidings is negligence. The court cannot hold, under the surrounding circumstances, that this delay is negligence as a matter of law. At the rate the truck was being driven it took about a second for the truck to move from the first siding to where the driver looked to the left. This second could have been reasonably occupied by the driver in looking ahead to see if the way was clear and observing if there were an outward-bound railway movement on defendant's tracks to his left. There would necessarily be a short interval of time required in looking ahead before he could look to his left. He had nothing to apprehend from vehicle traffic on his left. He was moving with the traffic in the west lane of travel, and he knew that the occasional use of the second siding by the railway carrier would be from the left, against and across this lane of travel. Such a movement would not be paramount to the user of the highway by the public, and the driver of the truck was not bound to assume that

the use of the siding would imperil his safe passage. In fact, he had been signaled to proceed by the motorman of the car on the westbound track. The direction given by the motorman of this car, who was in a position to see the second car on the eastbound track, could at least be reasonably relied upon by the driver of the truck as an assurance that he could continue driving along the highway and over the first siding without being in any danger from a forward movement of the first car. If, in addition to the operation of his car, the motorman of the first car had a duty to perform with respect to the movement of the second car from the main eastbound track onto the siding, then his signal to the driver of the truck to proceed would be referable to the operation of both cars. There is testimony to the effect that the eastbound car was run by one man and that the westbound car had both a conductor and a motorman; and that, in entering the loop to reverse their directions on their respective car routes, the car with one operator had precedence over the car with two; and that the motorman on the westbound car, immediately before the accident, signaled by nod or motion of the hand to the motorman on the eastbound car to go ahead. Consequently, a direction on the part of the motorman of the first car for the driver of the truck to keep going was given with reference to the operation of both cars and if, on this assurance of present safety, the driver quickened the speed at which the truck was moving and did not look to his left for slightly more than a second, the question whether this momentary delay constituted negligence was not, under all the circumstances, for the determination of the court, but was merely a circumstance to be considered by the jury in reaching its conclusion on the issue of negligence. There is testimony from which it may reasonably be inferred that the failure of the driver of the truck to look to the left at the instant the first car ceased to be an obstruction of his view of the main tracks and the second car was immaterial, because there is evidence that the time the driver first looked to the left and applied his brakes in

an effort to stop the truck coincided with the first movement of the car from the eastbound track to the siding and with it across the westbound lane of travel. So, an earlier look to the left would not have revealed to the driver any condition or action from which it would have appeared to him that, by driving ahead as he had been directed by the first motorman, he did not have an opportunity to cross the siding safely. See *American Ry. Express Co. v. Kraft,* 154 Md. 516, 518, 140 A. 896; *Woodward v. O'Driscoll,* 44 R. I. 487, 118 A. 869, 871. Under the conditions of space and time which attended the accident and the circumstances of which there is testimony on the record, it cannot be said as a matter of law that the plaintiff must fail because of his own negligence. Where the evidence is conflicting or different inferences of fact may be reasonably drawn from the testimony, the question is one of fact for the jury. *Merrifield v. C. Hoffberger Co.,* 147 Md. 134, 137, 138, 127 A. 500; *Patton v. Grand Trunk Western R. Co.,* 236 Mich. 173, 210 N. W. 309-311.

There is testimony tending to show primary negligence on the part of the defendant's servants in the operation of the car. The motorman on the eastbound car had seen the truck before the driver had observed the eastbound car. The testimony of the motorman is that he noticed the driver of the truck was not going to make an attempt to stop. At this time the front of the street car had not passed beyond the westbound track. The westbound lane of travel is 23½ feet wide but, by reason of the siding crossing the lane diagonally, the distance the street car traveled before the collision happened was at least 30 feet. Since the motorman's testimony is that he was moving at the rate of ten miles an hour when he applied his brakes and that their application would bring the car to a stop in 21 feet when operated at that speed, the prompt use of his brakes would have averted the accident by a margin of 9 feet. It follows that there was testimony which, if believed, would tend to prove that the sole and proximate cause of the accident was

the negligent failure of the motorman, either in not applying his brakes in time, or in operating at such a high rate of speed as to make it impossible to stop the car in time to avoid a collision whose impact lifted the heavily laden truck and turned it over.

In operating the car from the main track over the switch onto and across the public street, and against traffic between intersections of streets, the motorman must use a high degree of skill and caution to avoid danger or injury to any person on the highway or collision with any vehicle there being. It is the motorman's duty to keep a lookout, signal the approach when such a warning is reasonably necessary, move at a moderate speed, and stop when a necessity for stopping becomes apparent. *Washington, B. & A. R. Co. v. Fingles,* 135 Md. 574, 582, 583, 109 A. 431; *United Rys. & Elec. Co. v. Mantik,* 127 Md. 197, 200, 201, 96 A. 261.

The case of *Campbell & Sons v. United Rys. & Elec. Co.,* 160 Md. 647, 154 A. 552, has been urged by the defendant as a controlling authority in support of its position, but the recited facts on this record are so different from the case last mentioned that it does not govern the decision here. The facts stated in this opinion are based upon an assumption of the truth of all the testimony tending to support the plaintiff's action, since the court must do this on a prayer challenging the legal sufficiency of all the testimony to show a cause of action in the plaintiff. Many of these facts are controverted, and the resolution of the conflict in evidence was for the jury.

The jury found for the plaintiff on the issues of fact, and the judgment must be affirmed because no error of law is found in the rulings of the court at *nisi prius.*

*Judgment affirmed, with costs to the appellee.*