## BECK *v.* BALTIMORE TRANSIT CO.

[No. 159, October Term, 1947.]

508

*Decided May 20, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ., and BAILEY, Circuit Judge, specially assigned.

*J. Gilbert Prendergast,* with whom were *Clark, Thomsen & Smith* on the brief, for the appellant.
*Philip S. Ball* and *Theodore Sherbow* for the appellee.

BAILEY, Circuit Judge, by special assignment, delivered the opinion of the Court.

This is an appeal by the plaintiff from a judgment n. o. v. for costs in favor of the defendant, entered under Rule 8, Part III, Trials, of the General Rules of Practice and Procedure, 1945, on motion of the defendant after the jury empaneled to try the case had rendered

a verdict in favor of the plaintiff in the amount of $298.53.

The plaintiff, appellant here, contends that the judgment should be reversed and a new judgment entered in his favor in the amount of the jury's verdict for the following reasons: (1) because there was evidence legally sufficient to establish primary negligence on the part of the defendant, acting through its employee; (2) because the evidence does not establish contributory negligence by the plaintiff's agent as a matter of law; and (3) because, even if the plaintiff's agent was negligent, the facts call for the application of the doctrine of last clear chance.

The Court, in deciding whether to grant demurrer prayers or motions for judgments *non obstante veredicto,* resolves all conflicts in the evidence in favor of the plaintiff and assumes the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recovery. *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 196 A. 111; *Baltimore Transit Co. v. Worth,* 188 Md. 119, 52 A. 2d 249. The evidence in this case must, therefore, be considered in the light most favorable to the appellant.

The accident occurred on May 18, 1947, at about 11:50 p. m. on Light Street, in the City of Baltimore, a short distance north of its intersection with Fort Avenue. According to the plat filed as an exhibit Light Street is 32½ feet in width at this point. There are two sets of street car tracks in its center. The distance between the outermost rail of the north-bound tracks and the east curb is 8 feet, 10 inches. The area is well lighted. One Riley was the driver of a taxicab owned by the appellant. With his wife occupying the front seat, he had driven from Glen Burnie with two passengers, a colored man and woman. As he was driving north on Light Street the man directed him to pull over in front of the Royal Restaurant on the east side of Light Street, a short distance north of Fort Avenue, stating that he

wanted to get off. The driver stopped the taxicab as directed about six inches from the curb. When he asked for the fare of $3, the flat rate from Glen Burnie to Baltimore, the man refused to pay. The driver then pulled the hand brake on the taxicab, got out and went to the corner of Fort Avenue looking for a policeman. As he was returning to his taxicab he saw a street car moving north on Light Street stop about six feet behind his taxicab and then move forward striking his taxicab and stopping again when the front bumper was about at the middle of the street car. The left side of the taxicab was considerably damaged. The amount of damages was stipulated by counsel.

Zilka, the operator of the street car, testified on behalf of the appellee. His testimony did not differ in any material respect from that of Riley. His version of the accident was as follows: "I stopped at Fort Avenue and Light to pick up passengers. After picking the passengers up there the light changed green and I proceeded across Fort Avenue. As I was going across I noticed this car sitting out from the curb, and I reduced my speed to about two or three miles an hour and looked to see if I had room to get by the car, and I thought I could clear the car all right and I went by it at about that speed. As I reached the left front fender I heard the car strike and I stopped immediately. When I got out of the street car I looked at the automobile; the damage seemed to be on the left front fender and there was some scrape marks on the street car, about ten feet back of the front door post." He furthed testified: "I got down to look to see if I could get by"; "I thought I could get by all right"; "There was no one in the driver's seat"; and "I would say it (the taxicab) was close to eight or ten inches" from the curb. There was no protrusion from the side of the street car.

The testimony of Maddox, a passenger on the street car, was to the effect that the street car stopped or slowed up and then started again before the accident and that when he observed the taxicab after the acci-

dent it "was sitting out from the usual line of cars" and that "the rest of the car was to the curb but the front of the car looked as though it was about to pull out or just had backed in."

While it is true, as pointed out in the case of *E. H. Koester Bakery Co. v. Poller,* 187 Md. 324, 50 A. 2d 234, that the street railway owes its passengers a duty to deliver them to their destination as quickly as possible, consistent with safety, it has been held by this Court in numerous cases that it is the duty of the motorman, when operating a street car on the public streets, to keep a lookout, signal the approach when such warning is reasonably necessary, move at a moderate speed and stop when necessity for stopping becomes apparent. *Baltimore Transit Co. v. Worth, supra; Baltimore Transit Co. v. Alexander,* 172 Md. 454, 192 A. 349; *Washington B. & A. R. Co. v. Fingles,* 135 Md. 574, 109 A. 431; *United Rys. & Electric Co. v. Mantik,* 127 Md. 197, 96 A. 261.

The rule with respect to contributory negligence is that the act relied on to establish, as a matter of law, the existence of contributory negligence must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act relied on to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as a matter of law. *State v. Carroll-Howard Supply Co.,* 183 Md. 293, 37 A. 2d 330; *Holler v. Lowery,* 175 Md. 149, 200 A. 353; *Merrifield v. C. Hoffberger Co.,* 147 Md. 134, 127 A. 500; *Taxicab Co. v. Emanuel,* 125 Md. 246, 93 A. 807. The evidence must show some prominent and decisive negligent act on the part of the plaintiff, or as in this case, his agent, which directly contributed to the accident and was the proximate cause thereof, and this negligent act must be of so promi-

nent and decisive a character as to leave no room for difference of opinion thereon by reasonable minds. *Jones v. Wayman,* 169 Md. 670, 182 A. 417; *Baltimore & O. R. R. Co. v. State,* 104 Md. 76, 64 A. 304; *Cooke v. Baltimore Traction Co.,* 80 Md. 551, 31 A. 327.

The appellee contends that the decision in this case should be controlled by the decision of this Court in the case of *Taylor v. Western Maryland Ry. Co.,* 157 Md. 630, 147 A. 531, wherein it was held that the plaintiff was guilty of contributory negligence as a matter of law in stopping his automobile so close to a railroad track at a street crossing that the automobile was struck by a projecting part of the locomotive and that the plaintiff could not assert, as against the railway company, the doctrine of last clear chance, as it did not appear that the plaintiff's peril, by reason of his undue proximity to the track, was known, or should have been known, to those operating the train. In this case the accident happened at a grade crossing in a suburban area of Baltimore City, where Buck's Lane crosses the double tracks of the defendant. The plaintiff, driving west on Buck's Lane, saw the headlight of a locomotive on the southbound track, whereupon he stopped his automobile just "east of the tracks." He was constantly looking from left to right to see if anything was approaching. He felt positive that he was in a place of safety. Nevertheless he was struck by a locomotive on the northbound track.

There are many factors which distinguish the *Taylor* case from the case at bar. It was a grade crossing case; this is not. Taylor was at all times at the wheel of his automobile so that by moving it a few inches he could have avoided the accident; Riley had been required by the circumstances in this case to leave his taxicab momentarily, with no one at the steering wheel to move it in case of necessity. The engineer did not know of Taylor's peril and therefore made no effort to avoid the accident; the motorman, Zilka, not only knew of the perilous position of the appellant's taxicab, but actually

stopped or reduced his speed to two or three miles per hour before proceeding and striking the taxicab. There is no testimony in the instant case that Riley misjudged the distance between the left side of his taxicab and the street car tracks. On the contrary when asked the question "You thought there was no question you were clear of the tracks?" his reply was "Well, I didn't think anything like that. I was going to discharge the passengers and pull right out again, I wasn't going to be there but two of three minutes." There is no such similarity between the facts of the two cases as to call for the application of the same rule of law.

The facts in the instant case more nearly approach the facts in the case of *Davidson Bros. Co. v. Des Moines City Ry. Co.*, 170 Iowa 467, 153 N. W. 79, Ann. Cas. 1917C, 1226, cited with approval by this Court in *Baltimore Transit Co. v. Worth, supra.* In the *Worth* case the Court discusses the *Davidson* case as follows: "The plaintiff's truck was parked on a public street so that a streetcar rounding a curve could not clear it. The truck was parked to deliver merchandise. The railway company, defendant, charged the plaintiff with contributory negligence in so parking its truck. The operator of the streetcar testified that he was moving slowly, that he noticed the clearance was close but the front end cleared the truck and he continued his course until the rear steps, which projected beyond the body of the car, struck the truck. The Court there held that the case was properly submitted to the jury and pointed out that it was a fair inference from the statement of the motorman that when he found the front end would clear the truck he forgot for a moment the danger from the projecting steps in the rear, and, if so, his negligence was a question for the jury. Further, that even if he was not forgetful and was in the honest belief or opinion that there was room for him to pass the truck which he could clearly see, it would still be a question of fact and not of law whether he was exercising the reasonable care that his duty required."

A part of the Court's instruction to the jury in the *Davidson* case, *supra*, was in the following language: "It was the duty of defendant's employés in charge of said car to exercise ordinary care to determine whether or not plaintiff's auto truck was in a place of danger, and to avoid injury thereto. If said employés, or either of them, knew, or in the exercise of ordinary care should have known, that plaintiff's auto truck was in a place of danger in time to stop said car and avoid the injury to said auto truck, and failed to so stop the car, you would be justified in finding the defendant guilty of negligence."

In commenting upon this instruction the Court said: "This, it will be readily seen, is not a statement of the last fair chance principle, but rather a clear and explicit statement of the duty of the persons in charge of the car to keep proper lookout as they move through the street to avoid collision with other persons or vehicles rightfully being or moving upon the public way. That there is a duty to keep such lookout and to avoid injury to others whom the company's servants see or ought to see in a place of danger and that failure in this respect is negligence is too thoroughly settled to permit argument or citation of cases."

Applying the applicable principles of law noted herein to the facts of this case we have reached the conclusion that both the question of the primary negligence of the operator of the defendant's streetcar and the question of the contributory negligence of the taxicab driver were properly submitted to the jury. We cannot rule, as a matter of law, that the act of the taxicab driver in leaving his taxicab momentarily in a place of danger was a prominent and decisive negligent act on his part, which contributed directly to the accident and was the proximate cause thereof.

The case on this record presented factual issues which were properly submitted to the jury for its determination and the *nisi prius* court erred in entering the judgment n. o. v.

The record does not disclose that the defendant, at the conclusion of all the evidence, offered either a demurrer prayer or a motion for a directed verdict. Nowhere in the record does it appear that the Court made any ruling on such a prayer or motion. In the absence of such a prayer or motion and the ruling of the court rejecting or denying the same, there is no basis for a motion for a judgment n. o. v. Rule 8, Part III, Trials, of the General Rules of Practice and Procedure, 1945, in paragraph (a) provides, in part, as follows: "Whenever a motion for a directed verdict made by a party at the close of all the evidence is denied, then (1) within three days after the reception of a verdict, such party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * *".

However, in view of the conclusion which we have reached in this case, we have considered it as if such a motion were properly filed. The appellant states in his brief that such a motion was filed and that the Court reserved its ruling thereon. Under the rule such a reservation operates as a motion for judgment n. o. v.

Feeling that the case was properly submitted to the jury, we will reverse the judgment for the defendant for costs and enter a judgment for the plaintiff (appellant) against the defendant (appellee) for $298.53 and costs, of which $100.53 should be entered to the use of Sterling Fire Insurance Company.

> *Judgment reversed and judgment entered against appellee in favor of appellant for $298.53, of which $100.53 is to be entered to use of Sterling Fire Insurance Company, appellee to pay costs.*