## BEARINGS SERVICE COMPANY *v.* BALTIMORE TRANSIT COMPANY

[No. 61, October Term, 1950.]

*Decided January 10, 1951.*

2

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Edwin H. Brownley,* with whom was *Karl F. Steinmann* on the brief, for the appellant.

*A. Adgate Duer* and *Hamilton O'Dunne* for the appellee.

GRASON, J., delivered the opinion of the Court.

The Bearings Service Company (plaintiff below-appellant here) sued the Baltimore Transit Company (defendant below-appellee here) in the Superior Court of Baltimore City for damages resulting to its truck, occasioned by a collision between the truck and one of the street cars of the Transit Company at the intersection formed by Madison Avenue and Mosher Street, Baltimore City. The case was tried before a jury and resulted in a verdict in favor of appellant for $320.57. Subsequently appellee filed a motion for a judgment n. o. v. The court granted the motion and entered a judgment for appellee and appellant appealed therefrom to this court. This requires us to view the testimony in the case, because if there is any evidence in the record, however slight, legally sufficient as tending to prove negligence, the weight and value of such negligence was

for the jury; and if the record discloses such evidence the case must be reversed; if not, the action of the lower court must be affirmed. *Valench v. Belle Isle Cab Co.,* 196 Md. 118, 75 A. 2d 97; *Baltimore Transit Co. v. Worth,* 188 Md. 119, 52 A. 2d 249, 5 A. L. R. 2d 740; *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 196 A. 111; *Beck v. Baltimore Transit Co.,* 190 Md. 506, 58 A. 2d 909.

Madison Avenue runs generally north and south, and Mosher Street runs east and west. The appellee's street car tracks are on Madison Avenue. The accident occurred on the morning of June 1, 1948, about 11 :30 o'clock. The weather was clear and the streets dry. The appellant's truck, traveling west on Mosher Street, arrived at the intersection. Two men, one of whom was the witness Stowars called by the plaintiff, were talking at the northeast corner formed by the intersection of the two streets. He said the street car was proceeding north on Mosher Street, about in the middle of the block formed by Lafayette Avenue on the south and Mosher Street on the north. "The truck had pulled up to the corner, and he pulled out, you see, going on across, which I say to the guy, 'He better step it up because that street car is coming pretty fast, he will tear him up', so just at that time I watched him, standing right there when it happened, this street car did hit the rear of the truck and it turned the truck around a little south and the street car went down and he stopped." He stated that the street car "was going pretty fast". He further testified: "I would say the truck was going—he had it in low gear. I could tell the way the truck was pulling. He could have been going 12 or 15 miles an hour at the tops".

The witness Wiggins was driving the truck. He testified: "Well, as I pulled up to Madison Avenue and Mosher Street I looked up Mosher Street—I mean Madison Avenue and seen the street car headed that way; the street car was about middle way of the block." He said when he first saw the street car he was "right on the curb—on the housing line". That is to say, he

was at the building line on Mosher Street when he first saw the street car. He could not say how fast the street car was moving, but he thought he had time to cross the intersection; he was traveling about ten miles per hour when he entered the intersection and could have stopped his truck within ten feet. He said that the brakes were "fine".

"Q. Mr. Wiggins, you, I believe, stated that you looked south on Madison Avenue and saw the street car half a block away? A. That is right.

"Q. And then you proceeded forward? A. Yes, sir.

"Q. Did you look again to see where the street car was before you got to the north bound tracks? A. No, sir, after I seen him that distance I went on across."

The point of impact on the truck was to the rear of the door, and as a result of the collision the truck came to a stop facing in a southerly direction on Madison Avenue. The street car stopped with the center door opposite the pedestrian walk on the north side of the intersection, the front of the street car approximately twenty-two feet past the north curb line of Mosher Street.

Keller, the operator of the defendant's street car, testified that from Lafayette Avenue northerly to Mosher Street is one block. It is down grade to the north. He was driving this car north and was drifting and was not "feeding it power at all". He was going between fifteen and twenty miles an hour. He slackened his speed to about ten miles per hour just a little north of the center of the block, "a car length and a half from the building line" on Mosher Street, and retained that speed up to the building line. He said: "I was doing about ten miles an hour when I was at the building line intending to stop my car." The street car was under control. The witness testified he saw the truck first when the street car approached close to the intersection, but could not see it before because of the buildings which line Madison Avenue. When the street car was between the south building line and the curb line on Mosher Street he thought that the truck was going to stop. At that point

the street car was going from five to eight miles an hour and it was at this point that he first had a good view of Mosher Street. He sounded the gong on the street car and applied the power when the front of the street car was about at the sidewalk. He did not put on much power. As soon as he discovered that the truck was not going to stop he applied the brakes and did everything he could to stop the car. The street car was being operated at ten miles per hour and could have been stopped in a distance of a street car and a half. Although the brakes were applied immediately, the collision occurred. He further testified he thought the truck was going to stop and that it "seemed as if it was stopping for me. I sounded my gong and applied my power to go on across".

The witness Davlin was midway of the block between Lafayette Avenue and Mosher Street. He testified that the street car was traveling at a rapid rate of speed in the middle of the block. He did not see the truck before the accident occurred, nor did he see the accident, except at the very moment of the impact.

There were three other witnesses called in the case. The testimony of two, called by the defendant, related to speed, and said the car was traveling moderately; and the other witness testified as to measurements.

The plaintiff, in its brief, states that the only question in controversy is: "Was the Plaintiff's chauffeur, under the facts and circumstances in this case, guilty of contributory negligence as a matter of law, because, before crossing the northbound tracks of the Transit Company the Plaintiff's chauffeur did not look the second time". It is well settled that the rights of operators of street cars and automobiles to the use of the streets of a city are equal, and the duties of their operators in reference to the observance of precautions against injuries reciprocal. *Rumbley v. Baltimore Transit Co.*, 194 Md. 164, 69 A. 2d 805; *United Railways & Electric Co. v. Mantik*, 127 Md. 197, 96 A. 261. It is also well settled that where the plaintiff in a suit for damages is guilty of contributory

negligence the negligence of the defendant becomes immaterial. *Girton v. Baltimore Transit Co.*, 192 Md. 671, 65 A. 2d 329; *Heying v. United Railways Co.*, 100 Md. 281, 59 A. 667, 668.

In the *Heying case, supra,* the street car was almost a block away when the plaintiff, driving a wagon, started to cross the tracks and was struck before she completed the crossing. The court said: "It is apparent from all the evidence that the car must have been a very short distance from the corner when the plaintiff, with a reckless disregard of her safety, or perhaps more likely, a want of appreciation of her danger, drove directly on the track in front of the car." A recovery was refused.

In the *Girton case, supra* [65 A. 2d 332], the plaintiff was driving an automobile west on Lafayette Avenue. A street car was southbound on Madison Avenue. Plaintiff testified that when he approached Madison Avenue he slowed down to a speed of about five miles an hour. He said that he first looked to the left and saw that it was clear and then looked to the right and saw the street car about one-half a block away. He said there were some people on the northwest corner who were stepping off the curb into the street as if to board the street car, and as the car was slowing down he assumed that the motorman would stop for passengers. He accordingly increased his speed and started across Madison Avenue. When he looked again he saw that the street car had not stopped but had increased its speed. We said in that case: "Generally, when the driver of an automobile approaches a street car track at an intersection, he cannot assume that an approaching car will stop at the intersection, but he must pay attention to the approach of the car, and if he deliberately takes the risk of driving across the track in disregard of the danger of a collision, when a person of ordinary prudence would not take such a risk under the circumstances, he is guilty of negligence. (Authorities cited.) * * * Even an honest belief of a driver that he can cross

an intersection safely will not excuse his negligence in attempting to cross in front of an approaching street car, * * *." In that case a recovery was denied.

In the case of *Gross v. Baltimore Transit Co.*, 192 Md. 278, 64 A. 2d 147, we said that the truck driver had a duty not only to look before starting to make a left turn at the intersection over street car tracks, but to keep on looking until the track was reached.

In *Crawford v. Baltimore Transit Co.*, 190 Md. 381, 58 A. 2d 680, 683, a truck driver approaching a grade crossing did not see a street car when he looked while twenty-five feet from the track. The court said: "Even if we assume, without deciding however, that there was some evidence of unreasonable or improper speed on the part of the street car, the appellant was clearly at fault in failing to look again before he ventured upon the tracks. 'In thus looking too soon and too late to avoid the danger, the truck driver did not exercise the degree of care required by ordinary prudence.' *Colgate & Co. v. United Rys. & Electric Co.*, 156 Md. 472, 144 A. 519, 520. 'It was not only his duty to look before starting to cross the intersection but to keep on looking until the track, the real point of danger, was reached.'" (Citing authorities.)

The evidence in this case is perfectly clear. When the operator of the truck arrived at the northeast corner of the intersection formed by these two streets he brought his truck almost to a stop. There he saw the appellee's street car traveling north. It was nearer Mosher Street than Lafayette Avenue. He was at that time, he thinks, about forty or forty-two feet from the street car track; the brakes on the truck were good and he could have stopped the truck within ten feet. He did not look at the street car again. This testimony is uncontradicted. One witness testified that when he proceeded across he was in low gear and the witness said to a man with whom he was talking that if the truck didn't hurry up it was going to get hit.

8

The testimony of the operator of the street car is that he thought the truck was going to stop and let him go across, and he sounded his gong and proceeded across the intersection. It is perfectly apparent that the truck driver thought he could cross the railway tracks ahead of the street car. This case is governed by the principle set out in the old case of *Heying v. United Railways Company, supra*, which has been followed in the late cases from which we have quoted. It was the duty of the driver of the truck to keep his eye on the railway tracks, which was the place of danger. He approached the tracks without looking at the street car after he entered the intersection. Assuming, without deciding, that the operator of the street car was negligent, it is immaterial in this case. The plaintiff did not look "too soon and too late". He looked too early, and then did not look at all to see where the approaching street car was when he reached the tracks. There is not the slightest doubt, had he looked he could have stopped his truck in a place of safety, and thus have avoided the accident. His negligence was outstanding, prominent, and conspicuous. The judgment will be affirmed.

*Judgment affirmed, with costs.*