**ALBAUGH**
v.
**PENNSYLVANIA R. CO.**
**WETZEL**
v.
**PENNSYLVANIA R. CO.**
Civ. Nos. 1412-52, 2748-52.

United States District Court
District of Columbia.
March 24, 1954.

Hogan & Hartson, Washington, D. C., Macleay & Lynch, Washington, D. C., for plaintiffs.

Hugh B. Cox, James H. McGlothlin, Washington, D. C., for defendant.

KEECH, District Judge.

These cases arise from a collision between a truck and a freight train of the Pennsylvania Railroad at a grade crossing at New Midway, Maryland. Plaintiff Albaugh, who was driving the truck, sues for personal injuries. Plaintiff Wetzel, the owner of the truck, sues for destruction of the truck and loss of the cargo.

The cases are before the court on the defendant's motion for a directed verdict at the close of the plaintiffs' evidence. Three questions have been argued: (1) whether the evidence viewed in the most favorable light, plus all the reasonable inferences therefrom, is sufficient to show negligence on the part of the defendant railroad; (2) whether from plaintiffs' evidence it is apparent that the plaintiff Albaugh was contributorily negligent as a matter of law; and (3) whether there are facts in evidence which might make applicable the doctrine of last clear chance.

Since the collision occurred in Maryland, all substantive questions must be determined in accordance with Maryland law.

■■ At this stage of the case the evidence presents two possible bases on which the jury might find the defendant guilty of negligence, first, speed unreasonable under all the circumstances surrounding this crossing and the occasional operation of the train over it and, second, failure to the train to give any warning signal. While the evidence of negligence is slight, the question whether the train should have operated more slowly in view of the nature of this crossing, which had no warning bell, drop gate, or watchman, with a certain volume of traffic on the highway, possible obstruction of the approaches by weeds, buildings, and an overgrown dirt bumper on the railroad right-of-way, and because of the irregular schedule of the train, conceivably presents an issue for determination by the jury. As to the alleged failure of the defendant's engineer to sound the warning bell and horn, we have the negative testimony of the plaintiff Albaugh that he listened for signals but heard none, opposed by the testimony of the engineer that he started sounding his bell and horn at the whistle post before he got to the crossing and continued to sound the horn until the crash. The testimony of Mr. Underwood, plaintiff's principal witness, that he did not hear any warning signals when he was inside a store, 35 feet from the crossing, and had no reason to be listening for signals, is entitled to little or no weight, leaving the contradictory statements of plaintiff Albaugh and defendant's engineer without corroboration. This fact distinguishes the instant case from those in which the Maryland courts have held that negative testimony of a plaintiff that he did not hear signals is insufficient to take to the jury the issue of failure to sound them, in the face of testimony by disinterested witnesses that the signals were sounded.[1] Hence, on the present state of the evidence, if defendant's negligence were the sole issue, I would find the defendant should be required to go forward with its case.

■ Assuming, therefore, for the purpose of this motion that the defendant was negligent, I find on the testimony of plaintiff Albaugh and his witnesses that he was guilty of contributory negligence as a matter of law.

■ Mr. Albaugh testified that he knew of the existence of this railroad crossing, knew that the train arrived at New Midway at no regular time, and knew that the afternoon train was bound from Frederick to York; that he had gone to the New Midway school, had traversed the crossing many times in his own car, and had driven the Reo truck involved in the collision two or three or four times across the tracks; that he knew of the warning sign at the crossing; that he was acquainted with the fact that there were obstructions on or near the right of way which cut off from the view of a person driving along the highway trains approaching on the side from which the train in question would come on its afternoon trip from Frederick. The day was clear, dry, and sunny. Plaintiff Albaugh was proceeding in a southerly direction on a slight upgrade toward the track. He had been traveling at 25 miles per hour, but slowed down to 20 miles. He did not lessen his speed further or come to a stop. The photographs introduced as Plaintiffs' Exhibits 2 through 6 reflect possible obstructions, but indicate that from a point on Route 71 some distance north of the track area Mr. Albaugh could have seen an eastbound train approaching when it was a substantial distance west of the crossing. Mr. Underwood testified that one in a car or standing on the roadway could see the engine from the highway. The plaintiff Albaugh testified, however, that he looked but never saw the train, approaching at 25 miles an hour, and that he continued onto the track at 20 miles an hour. Since Mr. Albaugh must have seen the

1. Rinehart v. Risling, 1942, 180 Md. 668, 26 A.2d 411; State for Use of Emerson v. Baltimore & O. R. Co., 1936, 171 Md. 584, 190 A. 231.

train approaching had he looked, his testimony that he looked is incredible.[2]

■■ The Maryland rule is clear that failure to look is negligence per se;[3] and that where the view is obstructed, one seeking to cross the tracks is negligent per se if he does not slow down or stop in order to assure himself that the way is clear.[4] The Maryland Court of Appeals has stated that the rule requiring the motorist to look "is applicable with even greater force in outlying sections * * *."[5]

We come then to the question whether the plaintiffs have established any facts warranting an application of the last clear chance doctrine. As in the case of the defense of contributory negligence, last clear chance must be viewed in accordance with the law of Maryland.[6]

Plaintiffs pitch their argument that the doctrine applies on two premises: (1) that the jury might infer from testimony in the engineer's deposition that the fireman cried out before the train crossed the dirt road 240 feet from the crossing, and if the emergency brake had been applied at that point or promptly thereafter the collision would not have occurred; and (2) that the jury might find, from the engineer's testimony that the emergency brake would act "at once" but the engine was still going at 25 miles an hour at the time of the impact after application of the emergency brake, that the brake was defective, hence the last act of negligence would be defendant's.

It was the clear testimony of the engineer that the fireman cried out when the train was 80 or 90 feet from the crossing. Counsel for plaintiffs relies heavily on one answer in the engineer's deposition, which he interprets as a statement that the fireman called to the engineer before the engine had crossed the dirt road 240 feet west of Route 71.[7]

2. Crawford v. Baltimore Transit Co., 1947, 190 Md. 381, 58 A.2d 680; Maryland Electric Ry. Co. v. Beasley, 1912, 117 Md. 270, 83 A. 157; Phillips v. Washington & R. Ry. Co., 1906, 104 Md. 455, 65 A. 422.

3. Ford v. Baltimore Transit Co., 1952, 199 Md. 25, 85 A.2d 474; Bearings Service Co. v. Baltimore Transit Co., 1950, 197 Md. 1, 77 A.2d 779; Crawford v. Baltimore Transit Co., 1948, 190 Md. 381, 58 A.2d 680.

4. Crawford v. Baltimore Transit Co., supra; Baltimore Transit Co. v. Lewis, 1938, 174 Md. 618, 199 A. 879; Mehring v. Pennsylvania R. R., 1930, 158 Md. 310, 148 A. 459; State for Use of Marrow v. Washington B. & A. Ry. Co., 1924, 145 Md. 285, 125 A. 538; Annapolis W. & B. Ry. Co. v. State, 1906, 104 Md. 659, 65 A. 434; Kilmer v. Norfolk & W. Ry. Co., 4 Cir., 1930, 45 F.2d 532.

5. Downey v. Baltimore Transit Co., 1951, 197 Md. 245, 78 A.2d 666, 668.

6. Fairport, P. & E. R. Co. v. Meredith, 1934, 292 U.S. 589, 54 S.Ct. 826, 78 L. Ed. 1446.

7. Pages 25–28 of the engineer's deposition contain the following:
  "Q. Where was the front of your locomotive when your fireman first saw the truck? A. Just a short distance off south of the crossing.

"Q. What do you mean by a short distance? A. Well I would say two engine lengths when he spied the truck.

"Q. How long is your engine? A. I said about 40 to 45 feet from coupler to coupler.

"Q. You were in the neighborhood of 80 or 90 feet when the fireman first saw the truck? A. In that neighborhood, around there, yes.
*     *     *     *     *
"Q. Where was the front of your locomotive when he called out, 'Hold it'? A. I would say practically approaching the crossing.

"Q. Approaching, how close? Had the front of your engine crossed the private road? A. *No. If the front had crossed (sic) the private road I would not have hit him in the middle of the truck.*

"Q. In other words, you would have hit the back of the truck? A. I hit him right in the door. You know where the door is.

"Q. You hit the cab and the right front door; is that right? A. That is right.

"Q. Where was the front of your locomotive when the fireman called out to you, 'Hold it'? How far was it from the crossing? A. I wouldn't state the distance because the truck was practically on the crossing when I hit him and put the brakes on.

"Q. That is not the question at all, Mr. Zech. The question is how far was the

Standing alone, the answer is unintelligible and suggests a typographical error. The answers to prior and subsequent questions show that the engineer was testifying unequivocally that he heard the fireman's cry and threw on the brakes about two engine lengths (a length being stipulated as 46 feet) or 80 or 90 feet from Route 71, when he was practically at the highway, whereas he estimated the dirt road to be about 75 yards from the highway. There not only is no intelligible testimony that the fireman called out before the engine crossed the private road, but there are many distinct and positive statements that the engine was not more than 90 feet from the highway.

Simple arithmetic based on Mr. Albaugh's own statements demonstrates that he could not have been observed in a perilous position when the engine crossed the private road. An engine travelling at 25 miles an hour would cover 36.7 feet in one second, and when 240 feet from the crossing would have been a little over 6.5 seconds away from Route 71. Since a vehicle travelling at 20 miles an hour goes 29.3 feet in a second, the truck would have been at that moment at least 180.45 feet back of the intersection. Had the fireman sighted the truck proceeding at 20 miles an hour 180 feet back of the crossing, he would have had no reason to cry out, for he would have had the right to assume that the truck, being in a position of safety, would yield the right of way to the train.[8] As the plaintiff Albaugh would not then have been in peril, the fireman could not have observed any need to avoid a collision or oblivion to peril on Mr. Albaugh's part.

On the other hand, if the train were 90 feet away from the crossing when the fireman called out, it would reach Route 71 in roughly 2 and ½ seconds. The truck would then have been 73.25 feet from the crossing; and if there was no indication that the driver was going to stop, the fireman would become apprehensive and warn the engineer, whose view to the left was obstructed by the cab of the engine.

There is no evidence as to the number of feet in which an engine of the type here involved can be stopped. The engineer stated that on application of the emergency brake the train begins to slow down in a matter of seconds or "at once", "just as soon as the air gets back in that distance." He testified on the stand that the engine stopped after the impact in five car lengths and in his deposition two or three car lengths, a length being 40 feet.

Taking judicial notice of the fact that a human being has a certain reaction time (placed at ¾ of a second by plaintiffs' counsel) before he can operate the instrument which sets the brakes in motion and taking into consideration the fact that the mechanism of a train air brake, according to plaintiffs' witness, does not function instantaneously once it is put into operation and the further fact that during the interval necessary for reaction time plus functioning of the brake mechanism, the train was proceeding at 25 miles an hour, or 36.7 feet a second, the court holds there is no proof of a time when the engineer could have stopped the train or even slowed it down appreciably. Since there was no showing

front of your locomotive from Highway 71 when the fireman called out to you, 'Hold it'? A. I couldn't say. I wouldn't say.

"Q. You can give me your best estimate of it. What is your best recollection about where the front of your locomotive was when you heard this sound 'Hold it'? A. I would say about two engine lengths.

"Q. About 90 feet? A. Yes.

"Q. What would you estimate the dis-

tance that private road is from the crossing?

*     *     *     *     *

"A. That could be about, at least, 75 yards.

*     *     *     *     *

"Q. You say the front of your engine was about 80 or 90 feet when you heard the sound 'Hold it'? A. That is right."

8. Pennsylvania R. Co. v. State, 1947, 188 Md. 646, 53 A.2d 562; Klein v. United Rys. & Electric Co., 1927, 152 Md. 492, 137 A. 306.

that at the time the truck entered the tracks on the grade crossing the railroad train could have been stopped short of the crossing, there is no evidence to support a theory of last clear chance.[9]

As to the argument that it might reasonably be inferred that the train did not slow down because the brakes were defective, assuming *arguendo* that the brakes did fail, no inference of negligence on the part of the defendant may be drawn from such failure. Last clear chance applies when the defendant could have avoided harm by the use of the *means available*.[10]

As stated in United States v. Morow, 1950, 87 U.S.App.D.C. 84, 182 F. 2d 986, there are cases which hold that antecedent negligence of a certain character, which deprives the defendant of a chance to prevent the accident, places the responsibility on him, but those cases involve the knowing operation of a vehicle with a continuing defect. If it should be inferred that the brakes failed to operate, there is no evidence here that the defect existed prior to the failure, or that the defendant knew or should have known of the defect. The sole evidence as to the prior condition of the brakes and the defendant's knowledge thereof, is the testimony of the engineer, plaintiffs' witness, that he checked the operation of the brakes and found them to be functioning before the train left Fred-

erick, approximately 13 miles away. Any inference that the brakes were improperly checked at Frederick, as suggested by plaintiffs' counsel, would be sheer speculation. Theory and supposition are worthless as a foundation to support a verdict.[11]

" 'Where it is manifest to the court upon the plaintiff's own showing and the uncontradicted evidence in the case that there is no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the court to direct a verdict for the defendant.' " [12]

Plaintiffs claim that the defendant, by going beyond the scope of the plaintiffs' examination of the engineer, has put in evidence, and hence has waived its right to a directed verdict on plaintiffs' case. For the purpose of this motion, it is not necessary to determine how the defendant's right to a directed verdict would be affected by the improper admission of new material on cross-examination of plaintiffs' witness, since the questions put by defendant were proper cross-examination to bring out matters tending to qualify, modify, or explain the engineer's testimony on direct examination[13] concerning the circumstances of the accident.

For the foregoing reasons, I am constrained to grant the defendant's motion for a directed verdict.

9. Pennsylvania R. Co. v. State, 1947, 188 Md. 646, 53 A.2d 562.

10. Landfair v. Capital Transit Co., 1948, 83 U.S.App.D.C. 60, 165 F.2d 255; Dean v. Century Motors, Inc., 1946, 81 U.S. App.D.C. 9, 154 F.2d 201.

11. Baltimore Transit Co. v. Revere Copper & Brass, Inc., 1949, 194 Md. 611, 72 A.2d 4.

12. Id., 194 Md. at page 619, 72 A.2d at page 7 quoting Baltimore Transit Co. v. Young, 1947, 189 Md. 428, 436, 56 A.2d 140, 144.

13. 5 Wigmore, Evidence § 1368, p. 34 (3d ed. 1940), cited with approval in Branch v. United States, 1948, 84 U.S. App.D.C. 165, 171 F.2d 337; Washington Railway & Electric Co. v. Dittman, 1915, 44 App.D.C. 89; Sierocinski v. E. I. Dupont De Nemours & Co., 3 Cir., 1941, 118 F.2d 531; Armiger v. Baltimore Transit Co., 1938, 173 Md. 416, 196 A. 111.